2023-1469

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

**Z.A. SEA FOODS PRIVATE LTD., B-ONE BUSINESS HOUSE PVT. LTD.,
HARI MARINE PRIVATE LTD., MAGNUM EXPORT, MEGAA MODA PVT.
LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE
LTD., SHIMPO EXPORTS, FIVE STAR MARINE EXPORTS PRIVATE
LIMITED, HN INDIGOS PRIVATE LTD., RSA MARINES, ZEAL AQUA LTD.,**
*Plaintiffs-Appellees*

v.

**UNITED STATES,**
*Defendant*

**AD HOC SHRIMP TRADE ACTION COMMITTEE,**
*Defendant-Appellant*

---

Appeal from the United States Court of International Trade in
Court No. 1:21-cv-00031-GSK, Judge Gary S. Katzmann

---

## OPENING BRIEF OF DEFENDANT-APPELLANT
## AD HOC SHRIMP TRADE ACTION COMMITTEE

Nathaniel Maandig Rickard
Zachary J. Walker
**PICARD KENTZ & ROWE LLP**
1750 K Street NW
Suite 800
Washington, DC 20006
(202) 331-4040

*Counsel to the Ad Hoc Shrimp
Trade Action Committee*

April 10, 2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-1469

**Short Case Caption** Z.A. Sea Foods Private Ltd. v. US

**Filing Party/Entity** Ad Hoc Shrimp Trade Action Committee

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/10/2023

Signature: /s/ Zachary Walker

Name: Zachary Walker

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Ad Hoc Shrimp Trade Action Committee | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable      ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable      ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable      ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION ...............................................................................1

STATEMENT OF RELATED CASES...................................................1

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE..............................................................3

STATEMENT OF FACTS ...................................................................4

    A.    The Underlying Administrative Review ...............................4

    B.    The CIT's Remand Order...................................................9

    C.    Commerce's Remand Determination.................................10

    D.    The CIT's Opinion on Remand and Judgment ..................11

SUMMARY OF ARGUMENT .............................................................11

ARGUMENT ...................................................................................13

    A.    Standard of Review .......................................................13

    B.    Legal Standards Concerning the Determination of Normal Value.....14

    C.    Commerce's Original Determination Should Be Upheld for Being Supported by Substantial Evidence and Otherwise in Accordance with Law...........................................................................17

    D.    Domestic Producers Exhausted the Argument that Third Country Sales Must Be For Consumption in the Third Country Market..........24

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................31

# TABLE OF AUTHORITIES

## Cases

Am. Silicon Techs. v. United States,
  334 F.3d 1033 (Fed. Cir. 2003) ............................................................13

Baley v. United States,
  942 F.3d 1312 (Fed. Cir. 2019) ...........................................................30

Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States,
  5 F.4th 1367 (Fed. Cir. 2021) .............................................................14

Carducci v. Regan,
  714 F.2d 171 (D.C. Cir. 1983) ............................................................25

Consol. Edison Co. v. NLRB,
  305 U.S. 197 (1938) .................................................................. 13, 21

Consolo v. Fed. Mar. Comm'n,
  383 U.S. 607 (1966) ...........................................................................14

Dupont Teijin Films USA, LP v. United States,
  407 F.3d 1211 (Fed. Cir. 2005) ..........................................................13

Goodluck India Ltd. v. United States,
  11 F.4th 1335 (Fed. Cir. 2021) ...........................................................21

Husteel Co. v. United States,
  491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007).......................................16

INS v. Elias-Zacarias,
  502 U.S. 478 (1992) ...........................................................................14

Matsushita Elec. Industrial Co. v. United States,
  750 F.2d 927 (Fed. Cir. 1984) ....................................................... 13-14

Nucor Corp. v. United States,
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009).......................................14

Peer Bearing Co. - Changshan v. United States,
  766 F.3d 1396 (Fed. Cir. 2014) ..........................................................13

Trading Techs. Int'l, Inc. v. IBG LLC,
    921 F.3d 1378 (Fed. Cir. 2019) ............................................................30

U.S. Steel Group v. United States,
    96 F.3d 1352 (Fed. Cir. 1996) ..............................................................21

United States v. Great Am. Ins. Co. of New York,
    738 F.3d 1320 (Fed. Cir. 2013) ........................................... 24-25, 29, 30

Z.A. Sea Foods Private Ltd. v. United States,
    569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022)............................... *passim*

Z.A. Sea Foods Private Ltd. v. United States,
    606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022)............................... *passim*

Zhejiang Sanhua Co. v. United States,
    61 F. Supp. 3d 1350 (Ct. Int'l Trade 2015)..........................................25

**Statutes**

19 U.S.C. § 1516a ................................................................. 2, 3, 21

19 U.S.C. § 1517 ..............................................................................8

19 U.S.C. § 1675 ..............................................................................4

19 U.S.C. § 1677a ..........................................................................14

19 U.S.C. § 1677b ................................................................. *passim*

19 U.S.C. § 1677f-1 ..................................................................... 4-5

28 U.S.C. § 1295 ..............................................................................2

28 U.S.C. § 1581 ..........................................................................2, 3

**Regulations**

19 C.F.R. § 351.404 ............................................................ 5, 17, 18

19 C.F.R. § 351.405 ........................................................................17

# Administrative Determinations

Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping
  Duty Administrative Review and Final Determination of No Shipments;
  2018-2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) ........... *passim*

Certain Frozen Warmwater Shrimp From India: Preliminary Results of
  Antidumping Duty Administrative Review; 2018-2019, 85 Fed. Reg. 13,131
  (Dep't Commerce Mar. 6, 2020) ........................................................................ 6-7

Notice of Amended Final Determination of Sales at Less Than Fair Value and
  Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India,
  70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005) ............................................4

Notice of Amended Final Determination of Sales at Less Than Fair Value and
  Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the
  Socialist Republic of Vietnam, 70 Fed. Reg. 5,152 (Dep't Commerce
  Feb. 1, 2005) ...........................................................................................................6

**OPENING BRIEF OF DEFENDANT-APPELLANT
AD HOC SHRIMP TRADE ACTION COMMITTEE**

## INTRODUCTION

On behalf of Defendant-Appellant Ad Hoc Shrimp Trade Action Committee ("Defendant-Appellant" or "Domestic Producers"), we respectfully submit this opening brief in accordance with Federal Rule of Appellate Procedure 28 and Federal Circuit Rule 28. Domestic Producers challenge the revised antidumping duty ("ADD") rates assigned by the U.S. Department of Commerce ("Commerce") in the fourteenth administrative review ("AR14") of the ADD order on certain frozen warmwater shrimp from India. The AR14 period of review ("POR") covered entries made from February 1, 2018 through January 31, 2019. Commerce's revised dumping rates are neither supported by substantial evidence nor in accordance with law.

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendant-Appellant is aware of no other case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in this case.

## JURISDICTIONAL STATEMENT

This is an appeal from the final judgment of the U.S. Court of International Trade ("CIT") entered on December 6, 2022 in the case Z.A. Sea Foods Private

1

<u>Ltd. v. United States</u>. Appx0001. The CIT exercised jurisdiction pursuant to 28 U.S.C. § 1581(c), which gives the CIT exclusive jurisdiction over any civil action commenced under section 516A of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(B)(iii).[1] This Court has jurisdiction over this appeal from the CIT pursuant to 28 U.S.C. § 1295(a)(5).

Defendant-Appellant filed its notice of appeal on February 1, 2023, within 60 days of the CIT's final judgment, making this appeal timely under Federal Circuit Rule 4.

## STATEMENT OF ISSUES

This appeal raises the following issues:

1. Whether the CIT erred in remanding Commerce's decision to determine the normal value ("NV") of the subject merchandise using the constructed value ("CV") of that merchandise, where Commerce's conclusion that the Indian respondent's third-country sales were not representative was in accordance with law, supported by substantial record evidence, and otherwise reasonable and lawful;

---

[1]     The CIT's remand opinion and order cited 19 U.S.C. § 1516a(2)(B)(i) as the basis for the CIT's jurisdiction. Appx0026. This citation is incorrect as this case does not concern a final affirmative determination issued under either section 705 or 735 of the Tariff Act.

2.  Whether the CIT erred in holding that Domestic Producers waived any argument regarding the appropriate interpretation of the language "for consumption" contained in 19 U.S.C. § 1677b(a)(1)(B)(ii) by failing to present adequate argument.

## STATEMENT OF THE CASE

This case concerns a final determination issued by Commerce in an administrative review of the ADD order on certain frozen warmwater shrimp from India published in the *Federal Register* as <u>Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019</u>, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) ("<u>Final Results</u>").  Appx2020-2025.  Commerce's rationale was set forth in the Issues and Decision Memorandum ("IDM") accompanying the <u>Final Results</u>.  <u>See</u> Appx1994-2019.  Z.A. Sea Foods Private Limited ("ZA Sea Foods") participated in Commerce's review and was selected by the agency as a respondent for individual examination.  <u>See</u> Appx0021.  ZA Sea Foods sought judicial review by the CIT of the <u>Final Results</u> pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).  <u>See</u> Appx0025-0026.

In April 2022, the CIT ordered remand for Commerce to recalculate the ADD rate assigned to ZA Sea Foods.  <u>Z.A. Sea Foods Private Ltd. v. United States</u>, 569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) ("<u>ZASF I</u>"), Appx0037-0038.

3

Commerce subsequently revised its ADD rates in the Final Results of

Redetermination Pursuant to Court Remand dated July 18, 2022.  Appx0255-0272.

The CIT sustained Commerce's redetermination, see Z.A. Sea Foods Private Ltd.

v. United States, 606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022) ("ZASF II"),

Appx0015, and entered final judgment on December 6, 2022.  Appx0001.

## STATEMENT OF FACTS

### A.    The Underlying Administrative Review

The ADD order on certain warmwater shrimp from India was issued in

February 2005.  See Notice of Amended Final Determination of Sales at Less Than

Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from

India, 70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005).  Since the order was

issued, Commerce has conducted periodic administrative reviews to determine the

amount of duty owed.  See 19 U.S.C. § 1675 (providing for periodic review of the

amount of any antidumping duty).  In response to requests from Domestic

Producers and other interested parties, Commerce initiated AR14 on May 2, 2019.

Appx0349-0353.

Because of the large number of exporters or producers involved in the

review, Commerce limited the number of exporters and producers individually

reviewed to those exporters and producers "accounting for the largest volume of

the subject merchandise from the exporting country that can be reasonably

examined." 19 U.S.C. § 1677f-1(c)(2)(B); see also Appx0021. Commerce

selected ZA Sea Foods as a mandatory respondent,[2] see Appx0021, and issued the

company its standard questionnaire to determine whether imports of subject

merchandise were being sold in the United States at less than fair value during the

POR.  See Appx0380-0383.

In response to Commerce's questionnaire, ZA Sea Foods reported that its

sales to customers in India (i.e., the company's home market sales) were

insufficient to form the basis of normal value.[3]  See Appx0021.  ZA Sea Foods

further identified Vietnam as its largest third country market.  See Appx0021-0022.

Domestic Producers submitted comments and rebuttal information on ZA

Sea Foods' initial reporting, providing Commerce with detailed shipment

information demonstrating that the overwhelming majority of ZA Sea Foods'

---

[2]     In the Final Results, Commerce determined that the other company selected
       for individual review (i.e., Razban Seafoods Ltd. ("Razban")) had no
       shipments of the subject merchandise and ordered that all shipments entered
       during the POR using Razban's unique ten-digit case number be assessed
       antidumping duties at the all-others rate in effect at the time of entry.  See
       Appx2021 (discussing final determination of no shipments).  This
       conclusion was not challenged before the CIT.

[3]     Commerce's regulations explain that a home market is normally considered
       "viable" when the quantity of the respondent's sales of the foreign like
       product is five percent or more of the quantity of its sales in the United
       States.  See 19 C.F.R. § 351.404(b).

shipments were to Vietnamese shrimp exporters.[4]  Appx0556-0564.  For example,

the trade data submitted by the Domestic Producers showed that roughly

60 percent of ZA Sea Foods' shipments to Vietnam during the POR were to three

companies that, in part, comprise the Minh Phu Group.  Appx0558-0559.

Domestic Producers also explained that the Minh Phu Group is a significant

shrimp exporter that has participated previously in administrative reviews

conducted under the related ADD order on frozen warmwater shrimp from

Vietnam.  See Appx0560-0561.

In a January 2020 supplemental questionnaire, Commerce sought additional

information from ZA Sea Foods regarding its Vietnamese sales for the purpose of

determining the suitability of using these sales to calculate NV.  Appx0630-0633.

In response, ZA Sea Foods acknowledged that "most of the customers in Vietnam

are processors."  Appx1767.

Commerce published the preliminary results of its administrative review in

the *Federal Register* on March 6, 2020.  Certain Frozen Warmwater Shrimp From

India: Preliminary Results of Antidumping Duty Administrative Review; 2018-

---

[4]     Frozen warmwater shrimp from Vietnam – like those from India – are
subject to antidumping duties when imported into the United States.  See
Notice of Amended Final Determination of Sales at Less Than Fair Value
and Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the
Socialist Republic of Vietnam, 70 Fed. Reg. 5,152 (Dep't Commerce Feb. 1,
2005).

2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) ("Preliminary

Results"), Appx1876-1880.  In the Preliminary Results, Commerce first

determined that ZA Sea Foods' home market sales were insufficient to permit a

proper comparison to its U.S. sales.  See Appx0023 ("Commerce agreed with {ZA

Sea Foods that its home market sales did not provide a viable basis for the

calculation of normal value.").  Commerce then rejected ZA Sea Foods' third

country sales to Vietnam as a basis for determining NV and proceeded to

determine NV using CV.  Id.

    In the Final Results, Commerce continued to use CV as the basis for

determining NV.  See Appx0024-0025.  Commerce's decision memorandum

accompanying the Final Results detailed the agency's conclusion to reject ZA Sea

Foods' third country sales to Vietnam as the basis for determining NV.

Appx2001-2014.  First, Commerce acknowledged evidence submitted by Domestic

Producers showing that ZA Sea Foods' primary customer in Vietnam also exported

shrimp to the United States.  Appx2009.  Commerce recognized that ZA Sea Foods

may not have had actual knowledge that its sales to customers in Vietnam "may

ultimately be re-exported to the United States," but explained why using such sales

to determine NV was inappropriate given the purpose of the statute to ensure a fair

comparison with the price of sales to the United States.  Id.  Commerce also

pointed to evidence on the record from an investigation into ZA Sea Foods'

Case: 23-1469    Document: 8    Page: 16    Filed: 04/10/2023

primary customer in Vietnam conducted by U.S. Customs and Border Protection

("CBP") under the Enforce and Protect Act ("EAPA").[5] Id.  Commerce found that

information from CBP's EAPA investigation into the Minh Phu Group showed that

Indian-origin shrimp were transshipped by ZA Sea Foods' customer through

Vietnam into the United States.  Id.  Commerce explained that using ZA Sea

Foods' sales to customers in Vietnam as the basis for determining NV would be

inappropriate as it would essentially be a comparison between "U.S. sales to U.S.

sales rather than U.S. sales to a third-country market."  Appx2012.  Accordingly,

Commerce concluded that the price of ZA Sea Foods' sales to Vietnam could not

be used to determine NV as the price of those sales were not representative of sales

in the third country market.  Appx2014.

In the Final Results, Commerce assigned ZA Sea Foods a weighted-average

dumping margin of 3.06 percent.  Appx2021.  Because ZA Sea Foods was the only

respondent for whom an individual weighted-average dumping margin was

calculated, Commerce assigned this rate to the other producers and exporters

subject to review.  Id.

---

[5]    The EAPA was enacted as part of the Trade Facilitation and Trade
Enforcement Act of 2015.  See Trade Facilitation and Trade Enforcement
Act of 2015 § 421, 19 U.S.C. § 1517.  The EAPA allows CBP to investigate
whether merchandise subject to an antidumping duty order or a
countervailing duty order is entered into the customs territory of the United
States by means of evasion.

### B.    The CIT's Remand Order

ZA Sea Foods appealed the <u>Final Results</u> to the CIT, challenging Commerce's decision to use CV to calculate the NV of the subject merchandise. <u>See</u> Appx0025-0026.  ZA Sea Foods alleged that Commerce's rejection of Vietnam as a third country market to determine NV was unsupported by substantial evidence.  <u>See</u> Appx0027.  According to ZA Sea Foods, the evidence relied on by Commerce was insufficient to support a conclusion that the respondent's sales to Vietnam were not representative.  Appx0027-0028; <u>see also</u> Appx0097-0100, Appx0104-0106.

In <u>ZASF I</u>, the CIT agreed with ZA Sea Foods that Commerce "failed to bear its burden of establishing 'that {ZA Sea Foods'} Vietnamese selling prices were not representative.'"  <u>See</u> Appx0028.  After reviewing the EAPA "evasion scheme evidence" and the "trade pattern evidence," the CIT held that "neither the EAPA determination nor the trade patterns of {ZA Sea Foods'} customers provide adequate basis for Commerce's conclusion that {ZA Sea Foods'} Vietnamese sales were not representative."  Appx0033.

In discussing Commerce's reliance on CBP's EAPA investigation, <u>ZASF I</u> noted that ZA Sea Foods "is not mentioned in the EAPA determination" and that the record before Commerce does not support the conclusion that "transshipment must have occurred during the administrative review period."  Appx0029-0030.

The CIT was similarly dismissive of Commerce's concern about the ultimate destination of ZA Sea Foods' sales to Vietnam, holding that Commerce failed to establish that the shrimp sold to Vietnam by ZA Sea Foods were not resold in Vietnam or processed into merchandise outside the scope of the orders. Appx0030-0031.

The CIT's remand order in <u>ZASF I</u> concluded that the record failed to support the conclusion that ZA Sea Foods' "Vietnamese sales were unrepresentative and thus unsuitable as a third country benchmark." Appx0037. The CIT accordingly remanded Commerce's "decision to reject the Vietnamese third country sales data" and the agency's calculation of NV using CV. Appx0027.

### C.    Commerce's Remand Determination

On remand, Commerce recalculated ZA Sea Foods' dumping margin relying on the company's third country sales to Vietnam to determine NV. Appx0255. Commerce's remand determination recognized that <u>ZASF I</u> held that the record evidence was insufficient to support a conclusion that "ZA Sea Foods' Vietnamese sales were unrepresentative and unsuitable to be used to calculate NV." Appx0256. In responding to Domestic Producers' comments on the draft remand, <u>see</u> Appx2050-2058, Commerce rejected the argument that the agency should continue to determine NV based on the CV because 19 U.S.C. § 1677b(a)(1)(B)(ii) requires that third country sales be "for consumption" in the third country market.

Appx0269-0271.  Commerce's remand determination revised ZA Sea Foods'

dumping margin to 1.73 percent.  Appx0272.  This revised rate was also applied to

the other Indian producers participating in the CIT appeal.  Id.

### D.    The CIT's Opinion on Remand and Judgment

The CIT sustained Commerce's remand determination in ZASF II.  See

Appx0002-0015.  The CIT's opinion did not substantively consider Domestic

Producers' challenge to Commerce's remand determination.  Appx0012-0014.

Instead, the CIT stated that the Domestic Producers' comments in opposition to

Commerce's remand determination "consist{ed} of no more than repeated

assertions that the statute should be interpreted and applied in a certain way,

without identifying the relevant authorities supporting those bare assertions."

Appx0013.  The CIT held that Domestic Producers waived any challenge to the

remand determination.  Appx0013-0014.  Judgment was then entered for

Defendant United States.  Appx0001.

## SUMMARY OF ARGUMENT

The Final Results were supported by substantial evidence and otherwise in

accordance with law.  19 U.S.C. § 1677b(a)(1)(B)(ii)(I) requires that the price of

third country sales be representative before such sales can be used to determine

NV.  There is no dispute that ZA Sea Foods' third country sales were to

Vietnamese shrimp exporters.  Commerce weighed the evidence on the record and

11

made a factual determination that ZA Sea Foods' sales to Vietnam were not representative and therefore unsuitable to determine the NV of the subject merchandise in this review. The <u>Final Results</u> should have been sustained as record evidence amply supported Commerce's determination. The CIT nonetheless remanded, holding that Commerce's determination that ZA Sea Foods' Vietnamese sales were unsuitable to determine NV was unsupported by substantial evidence. See <u>ZASF I</u>, Appx0017-0018.

The CIT erred in holding that there was not substantial record evidence to support Commerce's conclusion that ZA Sea Foods' Vietnamese sales were not representative. Instead of considering whether the administrative record as a whole permits Commerce's conclusion, the CIT committed reversable error by substituting its own weighing of the evidence for that of the agency.

Additionally, in sustaining Commerce's remand determination, the CIT erred in concluding that Domestic Producers waived any challenge to Commerce's remand determination. See <u>ZASF II</u>, Appx0013-0014. Domestic Producers' argument regarding the proper interpretation of the "for consumption" language used in 19 U.S.C. § 1677b(a)(1)(B)(ii) was adequately developed in comments submitted to the CIT and should have been considered.

## ARGUMENT

### A. Standard of Review

This Court will "review a decision of the Court of International Trade evaluating an antidumping determination by Commerce by reapplying the statutory standard of review that the Court of International Trade applied in reviewing the administrative record." Peer Bearing Co. - Changshan v. United States, 766 F.3d 1396, 1399 (Fed. Cir. 2014). "Thus, without affording any deference to the Court of International Trade, this court reassesses the administrative record for 'substantial evidence' and for consistency 'with law.'" Am. Silicon Techs. v. United States, 334 F.3d 1033, 1036 (Fed. Cir. 2003) (citations omitted). "Commerce's determination should therefore be upheld unless it is unsupported by substantial evidence on the record or is not in accordance with law." Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (citations omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted); see also Matsushita Elec. Industrial Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) ("On review, the question is whether there was evidence which could reasonably lead to the {agency's} conclusion, that is, does the administrative record contain substantial evidence to

support it and was it a rational decision?").  Moreover, the possibility of two

inconsistent conclusions being drawn from the record "does not prevent an

administrative agency's finding from being supported by substantial evidence."

Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted); see

also Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States, 5 F.4th

1367, 1374 (Fed. Cir. 2021) ("Reasonable minds may differ on the outcome, but 'a

determination does not fail for lack of substantial evidence on that account.'")

(citation omitted).  Rather, the agency's conclusions may be set aside only if the

record contains evidence "so compelling that no reasonable factfinder" could reach

the same conclusion.  INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); see also

Nucor Corp. v. United States, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

**B.    Legal Standards Concerning the Determination of Normal Value**

In order to determine whether merchandise is being sold in the United States

at less than fair value, the statute directs Commerce to make a comparison

"between the export price or constructed export price and normal value."

19 U.S.C. § 1677b(a).  Export price is defined by the Act as "the price at which the

subject merchandise is first sold . . . by the producer or exporter of the subject

merchandise outside of the United States to an unaffiliated purchaser in the United

States."  19 U.S.C. § 1677a(a).

Normal value is defined in 19 U.S.C. § 1677b, which provides various methods for Commerce to determine the NV of the subject merchandise. First, Commerce can determine NV using "the price at which the foreign like product is first sold . . . for consumption in the exporting country." 19 U.S.C. § 1677b(a)(1)(B)(i). However, if the exporting country, also commonly referred to as the home market, cannot be used to determine normal value, Commerce considers "the price at which the foreign like product is so sold . . . for consumption in a country other than the exporting country or the United States." Id. § 1677b(a)(1)(B)(ii).

19 U.S.C. §§ 1677b(a)(1)(B)(ii)(I)-(III) places limits on Commerce's authority to determine NV using third country sales. Specifically, 19 U.S.C. § 1677b(a) states:

(1) DETERMINATION OF NORMAL VALUE.—

(A) IN GENERAL.—The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.

(B) PRICE.—The price referred to in subparagraph (A) is—

(i) the price at which the foreign like product is first sold . . . for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price, or

>    (ii) in a case to which subparagraph (C) applies, the price at which the foreign like product is so sold . . . for consumption in a country other than the exporting country or the United States, if—
>
>    >    (I) such price is representative,
>    >
>    >    (II) the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and
>    >
>    >    (III) the administering authority does not determine that the particular market situation in such other country prevents a proper comparison with the export price or constructed export price.

Thus, under the statutory framework, "Commerce may use third-country sales price data to calculate normal value provided – among other criteria – that 'such price is representative.'"  Husteel Co. v. United States, 491 F. Supp. 2d 1283, 1290 (Ct. Int'l Trade 2007).

Where Commerce determines that home market prices cannot be used to determine NV, then the NV of the subject merchandise may be the CV of that merchandise.  Specifically, 19 U.S.C. § 1677b(a)(4) states:

>    (4) USE OF CONSTRUCTED VALUE.—If the administering authority determines that the normal value of the subject merchandise cannot be determined under {19 U.S.C. § 1677b(a)(1)(B)(i)}, then, notwithstanding {19 U.S.C. § 1677b(a)(1)(B)(ii)}, the normal value of the subject merchandise may be the constructed value of that merchandise, as determined under {19 U.S.C. § 1677b(e)}.

In summary, Commerce may use CV as the basis for NV where the agency

determines that home market prices are inappropriate.  See 19 C.F.R. § 351.405(a).

CV is not punitive or adverse, "it is simply another option when the home market

is not viable and there are issues with the third-country market."  Appx2013-2014.

### C.     Commerce's Original Determination Should Be Upheld for Being Supported by Substantial Evidence and Otherwise in Accordance with Law

Consistent with the statute, Commerce correctly found that ZA Sea Foods'

third country sales were unrepresentative and could not be used to determine NV.

Appx2008, Appx2013-2014.  Commerce reached this conclusion after considering

record evidence collected over the course of the administrative review showing

that ZA Sea Foods' sales to Vietnam were to customers that were themselves

exporters of frozen shrimp.  See Appx2009.  Moreover, because the shrimp sold by

ZA Sea Foods to customers in Vietnam may not have been consumed in that

market, Commerce reasonably concluded that the sales were not representative of

sales in the third country.  See Appx2012 ("Given that CBP found sales made by

the Minh Phu Group during the POR were ultimately sold in the United States, it

would be unreasonable to use ZA Sea Foods' Vietnamese sales, which include

sales to the Minh Phu Group, as the comparison market.").  Thus, substantial

evidence on the record supported Commerce's determination that "under the

criteria of {19 U.S.C. § 1677b(a)(1)(B)(ii)(I)} and {19 C.F.R. § 351.404(c)(2)(ii)}

ZA Sea Foods' prices to Vietnam are not representative" and therefore unsuitable to use in determining NV.  Appx2012.

As outlined above, the price of a respondent's third country sales must be representative in order for Commerce to determine the NV of the subject merchandise using third country sales.  19 U.S.C. § 1677b(a)(1)(B)(ii)(I); see also 19 C.F.R. § 351.404(c)(2)(ii) (describing situations where Commerce may decline to calculate NV using the price of sales in the home or third country markets).  The term "representative" is not defined in either the statute or Commerce's regulations.  Appx0020 ("Representativeness . . . is not defined by statute or regulation.") (citation omitted); see also Antidumping Duties; Countervailing Duties; 62 Fed. Reg. 27,296, 27,357 (Dep't Commerce May 19, 1997) ("Preamble") ("The Department has not included a definition of representative prices in these regulations, because the Department does not yet have sufficient experience with this new statutory term to provide meaningful guidance.").  Commerce's final determination expressed the agency's continued "concerns regarding the nature of {ZA Sea Foods'} Vietnamese sales."  Appx2008.  These concerns regarding the representativeness of ZA Sea Foods' sales to the third country market supported Commerce's conclusion that it was appropriate to determine the NV of ZA Sea Foods' sales using CV.  Id.  ("{W}e continue to find it appropriate to use CV as the basis of NV for ZA Sea Foods.").

Commerce, in analyzing the representativeness of ZA Sea Foods' third country sales, carefully considered the record.  See Appx2008-2014.  Commerce noted and discussed the significance of information submitted by Domestic Producers "showing that ZA Sea Foods' primary customer in Vietnam, the Minh Phu Group, also exported shrimp to the United States."  Appx2009.  Commerce reasonably explained why ZA Sea Foods' customers' status as exporters raised concerns regarding the third country sales serving as the basis for NV.  Specifically, Commerce explained that sales "found to be part of an evasion scheme are not an appropriate basis to use for comparison with sales made directly to the United States."  Id.  Importantly, Commerce's decision acknowledged that ZA Sea Foods may itself have been unaware of "re-exports to the United States," but recognized that this lack of knowledge does not demonstrate that the sales were in fact representative.  Id.

The record also demonstrates that Commerce considered the results of CBP's EAPA investigation of MSeafood, the Minh Phu Group's affiliated U.S. importer.  Appx2009.  Commerce observed that CBP's EAPA investigation concluded that the Minh Phu Group "transshipped Indian-origin shrimp through Vietnam."  Id.  Interpreting the EAPA decision, Commerce explained that ZA Sea Foods' primary customer in Vietnam engaged in no further processing before re-exporting Indian-origin shrimp.  Appx2010.  Commerce thus reasonably

determined that "ZA Sea Foods' prices to Vietnam are not representative." Appx2012.

Commerce, after careful consideration of the record, also explained why ZA Sea Foods' third country prices are not representative, noting that "{s}uch a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market." Appx2012. In particular, Commerce observed that the record demonstrated that the price of ZA Sea Foods' sales to Vietnam "are not truly prices for consumption in Vietnam as the shrimp is exported without further processing." Id. In light of this evidence, Commerce determined that ZA Sea Foods' sales "were not third-country sales as the regulations conceive of the term." Appx2013. Consequently, the agency determined that it would be inappropriate to use ZA Sea Foods' Vietnamese sales as the basis for NV.

Because Commerce's determination was supported by substantial evidence and fully consistent with the law it should have been affirmed. The CIT, however, rejected Commerce's conclusion, holding that "neither the EAPA determination nor the trade patterns of {ZA Sea Foods'} customers provide adequate basis for Commerce's conclusion that {ZA Sea Foods'} Vietnamese sales were not representative." Appx0033. The CIT acknowledged Commerce's finding that ZA Sea Foods' Vietnamese customers were exporters of shrimp. Nevertheless, it disagreed with Commerce's conclusion that this information could support a

conclusion that ZA Sea Foods' third country sales were not representative. Appx0027, Appx0037.

As the lower court recognized, the CIT must sustain Commerce unless the agency's factual findings are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." Appx0026 (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)); see also U.S. Steel Group v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996) (noting that the substantial evidence standard does not inquire "whether {the court} agree{s} with the {agency's} decision, nor whether {the court} would have reached the same result as the {agency} had the matter come before {the court} for decision in the first instance"). Indeed, this Court has explained on numerous occasions that "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." Goodluck India Ltd. v. United States, 11 F.4th 1335, 1344 (Fed. Cir. 2021) (quoting Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001)).

The lower court, rather than considering whether "a reasonable mind might accept" Commerce's factual conclusions, see Consol. Edison Co. v. NLRB, 305 U.S. at 229, reviewed the evidence anew and asked itself whether the record could support ZA Sea Foods' position instead. For example, Commerce described

21

information showing that ZA Sea Foods' primary customer in Vietnam also

exported shrimp to the United States.  Appx2009.  The CIT, looking at this

evidence, found that the record could also support a conclusion that the shrimp ZA

Sea Foods sold to Minh Phu were consumed in Vietnam.  Appx0030-0031.  But

notwithstanding the CIT's own observations, the record clearly supports a finding

that ZA Sea Foods' primary Vietnamese customer was itself an exporter.  If the

agency has considered potentially conflicting evidence, the possibility that

alternative interpretations of the evidence may exist is not sufficient reason to

disturb Commerce's decision under the substantial evidence standard of review.

Sidestepping Commerce's determination, the CIT also reassessed the

relevance of the EAPA investigation evidence.  Noting that ZA Sea Foods "itself is

not mentioned in the EAPA determination," the CIT rejected the weight that

Commerce accorded to this information.  Appx0029.  The CIT also explained that,

because the period of investigation of the EAPA investigation only partially

overlapped with the POR, Commerce failed to show that ZA Sea Foods' shrimp

exports were comingled and re-exported to the United States during the period

encompassed by Commerce's review.  Appx0029-0030.  The CIT's reweighing of

the EAPA investigation evidence was inconsistent with the standard of review

applied to factual determinations like those made by Commerce in deciding

whether the price of ZA Sea Foods' sales to customers in Vietnam were representative.

The CIT continued to reweigh the record in discussing what it referred to as "the trade pattern data." See Appx0031-0033. The CIT faulted Commerce's weighing of the evidence and adopted ZA Sea Foods' position that Commerce had failed to satisfy its burden of showing that ZA Sea Foods' Vietnamese customers did not resell the merchandise in Vietnam or process it into merchandise outside the scope of the orders. See Appx0032 (citing Pls.' Opening Brief at 17). Here, once again, the CIT engaged in *de novo* reweighing of the evidence in remanding Commerce's original determination. Record evidence cited by Commerce shows that approximately 60 percent of ZA Sea Foods' shipments to Vietnam during the POR were to three companies that comprise the Minh Phu Group. Appx2006; see also Appx0558-0560. Record evidence also shows that Minh Phu previously reported to Commerce that it had used imported shrimp for its exports to the United States. Appx0560-0561. Beyond the Minh Phu Group, the record contained additional evidence showing that ZA Sea Foods shipped to several other known Vietnamese shrimp exporters. See Appx0561-0562. Thus, a substantial portion of ZA Sea Foods' shipments were to shrimp exporters in Vietnam. On the other hand, the record did not include, and the CIT did not identify, any evidence supporting a conclusion that the Vietnamese shrimp processor customers

23

consumed Indian shrimp in the Vietnamese market.  Considering the totality of this

evidence, Commerce reasonably reached the conclusion that the price of ZA Sea

Foods' third country sales were not representative.  Accordingly, the CIT's remand

order should be reversed.

### D.    Domestic Producers Exhausted the Argument that Third Country Sales Must Be For Consumption in the Third Country Market

As explained above, the CIT committed reversable error when it remanded

the <u>Final Results</u>.  As a result, this Court should reverse the CIT's remand order,

and affirm Commerce's original determination calculating the NV of the

merchandise using CV.  However, should this Court agree with the CIT's holding

that the <u>Final Results</u> were unsupported by substantial evidence, a remand is still

warranted.  The CIT's opinion in <u>ZASF II</u> sustaining Commerce's remand

determination erred in holding that Domestic Producers waived their argument that

Commerce should have continued to determine NV using CV because ZA Sea

Foods' sales to Vietnam were not "for consumption" in the third country market as

required by the statute.  Appx0012-0014; <u>see also</u> 19 U.S.C. § 1677b(a)(1)(B)(ii)

(requiring that, when basing NV on third country sales, the price used to establish

NV be "the price at which the foreign like product is so sold . . . *for consumption* in

a country other than the exporting country or the United States") (emphasis added).

This Court has explained that arguments not appropriately developed may be

deemed waived.  <u>See</u> <u>United States v. Great Am. Ins. Co. of New York</u>, 738 F.3d

1320, 1328 (Fed. Cir. 2013) (citations omitted).  The CIT has similarly required that parties "discuss and apply the appropriate analytical framework" or risk the court holding that an argument was waived due to insufficiently developed argument.  See, e.g., Zhejiang Sanhua Co. v. United States, 61 F. Supp. 3d 1350, 1357-58 (Ct. Int'l Trade 2015).  The purpose behind waiver is that "courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."  Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.).

As discussed above, ZASF I remanded the Final Results holding that substantial evidence did not support Commerce's decision to reject ZA Sea Foods' third country sales as the basis for determining NV.  Following the CIT's remand order, Commerce released a draft remand determination and solicited comments from the parties.  Appx2030, Appx2042.  Domestic Producers submitted comments on the draft remand arguing that Commerce may use third country sales to determine normal value only when the sales to that market are actually sales "for consumption" in that market.  See Appx2050-2058.  These comments argued that Commerce must consider whether the third country sales are "for consumption" before considering the additional factors detailed in 19 U.S.C. §§ 1677b(a)(1)(B)(ii)(I)-(III) (including whether the prices of the third country sales are representative).  Id.

25

Commerce's remand determination rejected Domestic Producers' argument. While Commerce agreed with Domestic Producers that "the evidence on the record shows that ZA Sea Foods sold shrimp to certain Vietnamese customers that were exporters or resellers," Appx0270, the agency concluded that "{a}bsent affirmative evidence that the shrimp was not consumed in Vietnam . . . we do not have substantial evidence to support a finding that these sales may not be used to calculate normal value." Appx0270-0271. Commerce's remand determination recalculated ZA Sea Foods' dumping margin using the company's third country sales to Vietnam to determine NV. Appx0255.

Domestic Producers filed comments in opposition to Commerce's remand determination with the CIT. Appx0273-0292. In these comments, Domestic Producers argued that the CIT's holding in <u>ZASF I</u> did not "appear limited to rejecting Commerce's analysis of whether {ZA Sea Foods'} sales to Vietnam were 'representative,' but also to preclude the agency from reviewing the administrative record to determine whether {ZA Sea Foods'} sales were made for consumption in that third country market." Appx0282. Domestic Producers' argument went on to explain that the statutory framework for determining NV on the basis of third country sales requires that such sales be "for consumption" in that third country market. Appx0282-0283 (citing 19 U.S.C. § 1677b(a)(1)(B)(ii)). The Domestic Producers then directed the CIT to record evidence and argued that any

26

presumption that ZA Sea Foods' sales to customers in Vietnam were for consumption in that market had been rebutted.  See Appx0284-0290.  The Domestic Producers further explained that "Commerce is authorized to weigh the evidence before it and draw reasonable conclusions," including, in this case, the conclusion that ZA Sea Foods' sales to customers in Vietnam were not sales "for consumption" in the third country market.  Appx0288.

Both the Government and ZA Sea Foods filed responses with the CIT to Domestic Producers' argument, contesting the assertion that Commerce should have continued to rely on CV to determine NV as ZA Sea Foods' Vietnamese sales were not for consumption in the third country market.  Specifically, the Government's response noted that Domestic Producers' comments "falsely equates the *likelihood* of a finding with the standard of substantial evidence."  Appx0304.  The Government also claimed that the evidence that Domestic Producers relied on to argue that ZA Sea Foods' sales to customers in Vietnam were not sales "for consumption" had been considered and found to be lacking by the CIT.  Appx0303.  For its part, ZA Sea Foods also responded substantively to the argument presented by Domestic Producers.  See Appx0316-0321.  According to ZA Sea Foods, Domestic Producers failed to provide "any affirmative evidence on the record that actually rebuts" the presumption that the third country sales were for consumption in that market.  Appx0316.

In sustaining Commerce's remand determination, the CIT held in ZASF II that "due to the lack of adequate argument," any challenge to the remand determination by Domestic Producers was "deemed waived." Appx0004. The CIT described Domestic Producers' argument as "anchored" around the correct interpretation of the term "for consumption" contained in the statute. Appx0012. The CIT faulted Domestic Producers for not "discuss{ing} the relevant case law or Commerce practice interpreting the phrase 'for consumption' in the specific context of third country determinations and Commerce's ability to make presumptions in market viability analysis." Appx0012-0013. The CIT pronounced Domestic Producers' argument as "no more than repeated assertions that the statute should be interpreted and applied in a certain way." Appx0013. Ultimately, the CIT held that Domestic Producers' "arguments flounder in light of its undeveloped analysis on the underlying question of statutory interpretation." Appx0014. The CIT then sustained the remand determination and entered judgment for the United States. Appx0015, Apppx0001.

The CIT's opinion sustaining the remand determination incorrectly held that Domestic Producers' argument regarding the correct interpretation of 19 U.S.C. § 1677b(a)(1)(B)(ii) was insufficiently developed and therefore waived. As explained below, the Domestic Producers' remand comments offered more than "repeated{} assert{ions}" of a "certain theory of the statutory framework."

Appx0014.  Indeed, both the Government and ZA Sea Foods understood the

statutory argument presented by Domestic Producers, offering their respective

analyses on why Domestic Producers' position was incorrect.

The cases cited by the CIT in support of its holding are readily

distinguishable and demonstrate why a remand is warranted in this case.  For

example, the CIT's opinion relies on this Court's decision in <u>Great American</u>

<u>Insurance</u>.  Appx0013.  In that case, this Court held that the government waived its

claim for prejudgment interest because the brief in support of the government's

motion for summary judgment "did no more than end its brief with a prayer for the

relief requested in the complaint."  <u>Great Am. Ins. Co. of New York</u>, 738 F.3d

at 1328.  In explaining its holding, this Court noted that "{i}t may be . . . that the

government could have preserved its claim by making a short affirmative

presentation in its initial brief requesting summary judgment," explaining that

doing so "would have given Great American clear notice of its obligation to

present its legal and evidentiary responses to the government's novel claim."  <u>Id.</u>

In this case, Domestic Producers, in comments on the remand determination,

argued that record evidence rebutted any presumption that ZA Sea Foods'

Vietnamese sales were "for consumption" in the third country market.  Domestic

Producers' written argument explained how the burden of demonstrating

consumption in the third country market was shifted to ZA Sea Foods and how the

company's claimed ignorance as to the ultimate disposition of the shrimp does not provide a reasonable basis for Commerce to conclude that ZA Sea Foods' third country sales were for consumption in Vietnam. Appx0287. Importantly, unlike the fact pattern in Great American Insurance, the Government and ZA Sea Foods each had an opportunity to present their respective legal and evidentiary responses to Domestic Producers' contention. Thus, the CIT's reliance on Great American Insurance was unreasonable.

The CIT's citations to other cases from this Court applying waiver are equally unavailing. See Appx0013-0014. For example, in Trading Technologies International, this Court found that "a total of four sentences" raising "challenges based on a right to a jury under the Seventh Amendment, separation of powers under Article III, the Due Process Clause, and the Taking Clause" without any analysis insufficient to preserve the issue for appeal. Trading Techs. Int'l, Inc. v. IBG LLC, 921 F.3d 1378, 1385 (Fed. Cir. 2019). Likewise, in Baley v. United States, this Court found that "a single sentence" presenting an argument that was not analyzed by the trial court was "insufficient to preserve any separate arguments" on appeal. Baley v. United States, 942 F.3d 1312, 1331 (Fed. Cir. 2019). Unlike the arguments found to be waived on appeal in Trading Technologies International and Baley v. United States, Domestic Producers presented a developed argument – i.e., that any presumption that ZA Sea Foods'

30

third country sales to Vietnam were "for consumption" in that market was rebutted, resulting in such sales being an inappropriate basis to determine NV. This argument was understood and considered by the Government and ZA Sea Foods in their respective responses. The CIT's decision not to engage with the argument presented requires remand.

Finally, earlier rounds of briefing in this case made it clear that "{n}either the statute nor Commerce's regulations elucidate what it means for a sale to be 'for' consumption in a third country." Appx0233. Indeed, the Government's response to the Court's questions for oral argument confirmed that the Government is not aware of any prior Commerce decision addressing the "for consumption in a third country" question. Id. Thus, the CIT was unreasonable in faulting Domestic Producers for addressing non-existent case law. See Appx0012. The Court itself was clearly aware that there was nothing to discuss in this respect. For this reason, the Court's conclusion that Domestic Producers waived any argument as to the correct interpretation of the "for consumption" language contained in the statute should be remanded.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons discussed above, Domestic Producers request that this Court reverse the CIT's remand order and affirm Commerce's determination in the Final Results, which was supported by substantial evidence and otherwise in accordance

with law. Alternatively, this Court should remand with instructions that the CIT

consider Domestic Producers' argument in opposition to Commerce's remand

determination.

Respectfully submitted,

*/s/ Zachary J. Walker*

Nathaniel Maandig Rickard
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street NW
Suite 800
Washington, DC 20006

*Counsel to the Ad Hoc Shrimp Trade
Action Committee*

April 10, 2023

# APPENDUM OF REQUIRED DOCUMENTS

## TABLE OF CONTENTS

| Document | Appendix Pages |
|---|---|
| Z.A. Sea Foods v. United States,<br>   Judgment | Appx0001 |
| Z.A. Sea Foods v. United States,<br>   Slip Op. 22-136 (Ct. Int'l Trade Dec. 6, 2022) | Appx0002-0015 |
| Z.A. Sea Foods v. United States,<br>   Slip Op. 22-36 (Ct. Int'l Trade Apr. 19, 2022) | Appx0016-0038 |
| Z.A. Sea Foods v. United States,<br>   CIT Docket Sheet | Appx0039-0053 |

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LTD., | |
| Plaintiffs, | Before: Gary S. Katzmann, Judge |
| v. | Court No. 21-00031 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Defendant-Intervenor. | |

## <u>JUDGMENT</u>

This case having been duly submitted for decision, and the court, after due deliberation, having rendered its opinion, and now in conformity with that opinion, it is hereby

**ORDERED** that the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand, July 18, 2022, ECF No. 60-1, are sustained; and it is further

**ORDERED** that judgment is accordingly entered for Defendant the United States.

/s/      *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>December 6, 2022</u>
New York, New York

Slip Op. 22-136

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LTD., | |
| Plaintiffs, | Before: Gary S. Katzmann, Judge<br>Court No. 21-00031 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[The court sustains Commerce's Remand Redetermination.]

Dated: December 6, 2022

Robert G. Gosselink and Jonathan M. Freed, Trade Pacific PLLC, of Washington, D.C., for Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief

were Brian M. Boynton, Principal Deputy Assistant Attorney General and Patricia M. McCarthy, Director.  Of Counsel Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance.

Nathaniel Maandig Rickard and Zachary J. Walker, Picard, Kentz & Rowe, LLP, of Washington, D.C., for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

Katzmann, Judge:  This case returns to the docket in the wake of the court's remand order in Z.A. Sea Foods Priv. Ltd. v. United States ("ZASF I"), 46 CIT __, 569 F. Supp. 3d 1338 (2022). Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("Domestic Shrimp" or "AHSTAC"), an ad hoc coalition of domestic producers, floats new arguments built upon the flotsam and jetsam of the original determination.

The question presented in ZASF I was whether the United States Department of Commerce ("Commerce") was permitted to reject third country sales based on the evidence presented before it and use "constructed value as the basis of normal value ("NV") calculation in its administrative review of the antidumping duty ("AD") order covering certain frozen warmwater shrimp that had been into the United States at less than fair value in derogation of fair competition with domestic producers." 569 F. Supp. 3d at 1341.  Plaintiffs,[1] all foreign producers and exporters in India of the subject merchandise, argued that Commerce failed to support its determination with substantial evidence.  Id. at 1353.  The court remanded, finding that substantial evidence did not support Commerce's decision to reject the third country sales based on the evasion scheme evidence and the trade pattern evidence.  Id. at 1348–51.  On remand, Commerce found insufficient evidence that ZA Sea Foods' third country sales were unrepresentative and unsuitable for use in the

---

[1]  Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Private Limited, Hari Marine Private Limited, Magnum Export, Megaa Moda Private Limited, Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines and Zeal Aqua Limited will be referred to as "ZA Sea Foods" or "ZASF" throughout for ease of reference.

calculation, and thus recalculated normal value by relying on the previously rejected third country

sales data.  <u>See</u> Final Results of Remand Redetermination at 17, July 18, 2022, ECF No. 60-1

("<u>Remand Redetermination</u>").  Commerce also found that there was no evidence on the record to

support Domestic Shrimp's assertion that ZA Sea Foods' sales were not for consumption in

Vietnam.  <u>Id.</u>

Tempest-tossed but undeterred, Domestic Shrimp now asserts challenges to the <u>Remand</u>

<u>Redetermination</u> based on (1) the separate requirement set forth in the statutory language "for

consumption" in 19 U.S.C. § 1677b(a); (2) Commerce's purported obligation to make separate

findings on the issue of consumption; and (3) the shifting of burdens when presumptions are

rebutted.  <u>See generally</u> Def.-Inter.'s Cmts. on Remand Redetermination, Aug. 18, 2022, ECF No.

63 ("Def.-Inter.'s Br.").  Defendant United States ("the Government") and ZA Sea Foods request

that the court sustain the <u>Remand Redetermination</u>.  For the reasons set forth below, due to the

lack of adequate argument, those challenges are deemed waived and the court sustains the <u>Remand</u>

<u>Redetermination</u>.

## BACKGROUND

The court laid out in depth the legal and factual background of the proceedings in its

previous opinion.  The details pertinent to the <u>Remand Redetermination</u> are set forth below.

### I.    *Legal and Regulatory Framework*

As noted in <u>ZASF I</u>, in investigating whether goods are being "dumped," that is, sold by a

foreign company in the United States at less than fair value ("LTFV"), Commerce in its

antidumping investigation first determines whether the goods is being sold at LTFV.  569 F. Supp.

3d at 1342; <u>see also</u> 19 U.S.C. § 1677b(a).  Normal value provides the basis for this calculation,

serving as a comparison point with the sales price in the United States (defined as export price or

constructed export price) to determine whether dumping has occurred. 19 U.S.C. § 1677b(a); see also 19 C.F.R. § 351.404(a) (2022). Section 1677b(a)(1) states that:

(A) In general

The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.

(B) Price

The price referred to in subparagraph (A) is--

(i) the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price, or

(ii) in a case to which subparagraph (C) applies, the price at which the foreign like product is so sold (or offered for sale) for consumption in a country other than the exporting country or the United States, if--

(I) such price is representative,

(II) the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and

(III) the administering authority does not determine that the particular market situation prevents a proper comparison with the export price or constructed export price.

(C) Third country sales

This subparagraph applies when--

(i) the foreign like product is not sold (or offered for sale) for consumption in the exporting country as described in subparagraph (B)(i),

(ii) the administering authority determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or

(iii) the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

> For purposes of clause (ii), the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States.

19 U.S.C. § 1677b (emphasis added). Thus, the default method under the current statutory scheme, as first introduced by the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994), is to use home market sales value. 19 U.S.C. § 1677b(a)(1)(B)(i). However, the statute also provides two alternative bases of calculation. The first method, as described in section 1677b(a)(1)(B)(ii) and (1)(C), allows for the use of third country sales as a replacement figure for the exporter's home market sales. The second method allows for the use of constructed value as a proxy. See id. § 1677b(e). Although the URAA did not specify a preference order for the two alternative methods, see id. § 1677b(a)(4), it has been Commerce's practice, as specified in 19 C.F.R. § 351.404(f), to use sales to a third country rather than constructed value when possible. See Alloy Piping Prod., Inc. v. United States ("Alloy I"), 26 CIT 330, 338 n.4, 201 F. Supp. 2d 1267, 1274 n.4 (2002), aff'd sub nom. Alloy Piping Prod., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284 (Fed. Cir. 2003).

Commerce's regulations interpreting section 773 of the Tariff Act of 1930, as amended by the URAA and codified in 19 U.S.C. § 1677b, provide a standard procedure for normal value calculation.[2] It first engages in what is known as "market viability" analysis in Commerce practice,

---

[2] The relevant provisions in 19 C.F.R. § 351.404 are as follows:

> (b) Determination of viable market—

> > (1) In general. The Secretary will consider the exporting country or a third country as constituting a viable market if the Secretary is satisfied that sales of the foreign like product in that country are of sufficient quantity to form the basis of normal value.

see Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-

---

> (2) Sufficient quantity. "Sufficient quantity" normally means that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by an exporter or producer in a country is 5 percent or more of the aggregate quantity (or value) of its sales of the subject merchandise to the United States.

(c) Calculation of price-based normal value in viable market—

> (1) In general. Subject to paragraph (c)(2) of this section:

>> (i) If the exporting country constitutes a viable market, the Secretary will calculate normal value on the basis of price in the exporting country (see section 773(a)(1)(B)(i) of the Act (price used for determining normal value)); or

>> (ii) If the exporting country does not constitute a viable market, but a third country does constitute a viable market, the Secretary may calculate normal value on the basis of price to a third country (see section 773(a)(1)(B)(ii) of the Act (use of third country prices in determining normal value)).

> (2) Exception. The Secretary may decline to calculate normal value in a particular market under paragraph (c)(1) of this section if it is established to the satisfaction of the Secretary that:

>> (i) In the case of the exporting country or a third country, a particular market situation exists that does not permit a proper comparison with the export price or constructed export price (see section 773(a)(1)(B)(ii)(III) or section 773(a)(1)(C)(iii) of the Act); or

>> (ii) In the case of a third country, the price is not representative (see section 773(a)(1)(B)(ii)(I) of the Act).

(d) Allegations concerning market viability and the basis for determining a price-based normal value. In an antidumping investigation or review, allegations regarding market viability or the exceptions in paragraph (c)(2) of this section, must be filed, with all supporting factual information, in accordance with § 351.301(d)(1).

19 C.F.R. § 351.404 (2022) (emphasis added).

316, Vol. 1, 656, 821 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4161.  Market viability inquiry

focuses only on the sale volume, and if the sales in the market meet the threshold quantity or value

("sufficient quantity") of five percent or more of the aggregate quantity or value, then that market

is deemed a viable market.  19 C.F.R. § 351.404(b); see also Alloy I, 26 CIT at 339, 201 F. Supp.

2d at 1276 ("[T]he regulation does limit the inquiry of market viability to one criterion: the

sufficiency of sales in the third country.").  Once a third country market is found to be viable,

Commerce generally uses the viable market data as the basis for its normal value calculation.  19

C.F.R. § 351.404(c)(1)(ii), (f); see also Antidumping Duties, Countervailing Duties: Final Rule,

62 Fed. Reg. 27,296, 27,357 (Dep't Commerce May 19, 1997) ("Preamble") ("[T]he Department

provided that decisions concerning the calculation of a price-based normal value generally will be

governed by the Secretary's determination as to whether the market in a particular country is

'viable.'" (emphasis added)).  "Once Commerce is satisfied that the third country market is viable,

the party alleging that the prices are not representative or otherwise should not be used . . . . bears

the burden of establishing this fact."  Itochu Bldg. Prod., Co. v. United States, 41 CIT __, __, 208

F. Supp. 3d 1377, 1386 (2017) (citing Alloy I, 26 CIT at 339, 201 F. Supp. 2d at 1276).

## II.    *Procedural History*

On March 6, 2020, Commerce issued the preliminary results of its administrative review.

Certain Frozen Warmwater Shrimp From India: Prelim. Results of AD Admin. Rev.; 2018–2019,

85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020), P.R. 169.  Commerce preliminarily found

that while Vietnam satisfied the regulatory criteria for third country market selection under 19

C.F.R. § 351.404(e)(1) and (2), ZA Sea Foods' sales to Vietnam were not appropriate for

consideration due to the trade patterns of ZA Sea Foods' customers in Vietnam.  Id. (citing

Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification

at 2–3 (Sept. 26, 2019), P.R. 94).  In the Final Results, Commerce continued to use constructed

value, and cited the U.S. Customs and Border Protection's Enforce and Protect Act ("EAPA")

determination of an evasion scheme as additional information supporting the use of constructed

value.  See Certain Frozen Warmwater Shrimp From India: Final Results of AD Administrative

Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,580 (Dep't

Commerce Dec. 29, 2020), P.R. 199 ("Final Results"); see also Mem. from J. Maeder to J. Kessler

re: Issues and Decision Mem. for the Final Results of the 2018–2019 AD Admin. Rev. of Certain

Frozen Warmwater Shrimp from India at 16 (Dep't Commerce Dec. 21, 2020), P.R. 194 ("IDM").

Specifically, Commerce reasoned that:

> The prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp
> is exported without further processing.  Further, in some cases, the prices to
> Vietnam are in fact prices for sales that eventually become U.S. sales, meaning that
> they cannot be representative of prices for sales in the third-country market because
> they are ultimately U.S. sales.  Thus, the sales to the [customer in Vietnam] do not
> represent prices of sales made for consumption in Vietnam nor do they represent a
> third country given that they are resold to other countries including the United
> States.  Therefore, under the criteria of section 773(a)(1)(B)(ii)(I) of the Act and 19
> CFR 351.404(c)(2)(ii), ZA Sea Foods' prices to Vietnam are not representative.

IDM at 19 (emphasis added).

ZA Sea Foods challenged the Final Results in this court, arguing that Commerce's decision

to employ constructed value and not the Vietnamese third country market prices as the basis for

the subject merchandise's normal value was unsupported by substantial evidence and not

accordance with law.  ZASF I, 569 F. Supp. 3d at 1346.  As had been noted, in ZASF I, the court

held that neither the EAPA evasion scheme evidence nor the use of trade patterns constitutes

substantial evidence to support Commerce's decision to reject third country sales, and thus

remanded to Commerce for redetermination consistent with its opinion.  Id. at 1348–51.  On June

23, 2022, Commerce issued a Draft Remand Redetermination in which it found that the record

evidence does not support a finding that ZA Sea Foods' subject merchandise were not consumed

in Vietnam. Remand Redetermination at 12. Domestic Shrimp and ZA Sea Foods submitted

timely comments, see id., and Domestic Shrimp raised, inter alia, the following arguments:

- Commerce should continue to determine the NV of ZASF's sales using CV.
- Section 773 of the Act requires that, to determine NV on the basis of third country sales, such sales must be "for consumption" in that third country market.
- Information on the record of the administrative review demonstrates that ZASF's sales to Vietnam were to companies that were exporters of frozen warmwater shrimp products. Further, there is no evidence on the record to demonstrate that these Vietnamese shrimp companies consumed the merchandise they purchased rather that exporting the shrimp to other markets for consumption there.
- ZASF acknowledged that its sales were to Vietnamese exporters but maintained that it did not have specific knowledge of the disposition of the goods sold during the POR. Thus, according to ZASF, in the absence of definitive proof that merchandise was not consumed in a third country market, Commerce must presume that consumption occurred.
- The Draft Remand Results fail to address whether the Act requires Commerce to presume that sales to a third country market are for consumption. Nonetheless, any presumption is rebuttable, and AHSTAC submitted substantial evidence rebutting that presumption.
- While the Court's remand placed the burden on Commerce to demonstrate through substantial evidence that ZA Sea Foods' sales to Vietnam were not "representative" in order to invoke the exception set forth in section 773(a)(1)(B)(ii)(I) of the Act and 19 CFR 351.404(c)(2)(ii), this exception is only implicated if an exporter can first demonstrate that it has a sufficient quantity of sales "for consumption" in the third country market.

Id. at 13 (citations omitted). See generally AHSTAC Comments on Draft Results of

Redetermination Pursuant to Court Remand (June 30, 2022), R.P.R. 5.[3] On July 18, 2022,

Commerce issued its Final Results of Redetermination containing the following finding:

Section 773(a)(1)(B)(ii)(I) of the Act states that when NV is based on third country sales, NV shall be based on the price at which the foreign like product is sold for consumption if such price is representative. The preamble to Commerce's regulations provides that a determination of whether or not third country prices are representative is not one that Commerce will regularly consider. Further, third

---

[3] R.P.R. refers to the Remand Redetermination public record. See Joint Remand App., Sept. 30, 2022, ECF No. 67.

country sales are presumptively representative where aggregate sales quantities are at a sufficient level, and the party seeking to show that third country sales are not representative bears the burden of making such a showing. Finally, the Court has held that any determination by Commerce that third country prices are not representative must be supported by substantial evidence.

We agree that the evidence on the record shows that ZA Sea Foods sold shrimp to certain Vietnamese customers that were exporters or resellers. However, there is no evidence on the record to support AHSTAC's assertion that, simply because these companies were exporters, ZA Sea Foods' sales were not for consumption in Vietnam. Thus, we find that the record lacks sufficient evidence to support a finding that ZA Sea Foods' third country sales were not for consumption in Vietnam.

Remand Redetermination at 16. ZA Sea Foods and Domestic Shrimp submitted comments on the

Remand Redetermination to this court on August 18, 2022. See Pls.' Cmts. on Final Results of

Remand Redetermination, Aug. 18, 2022, ECF No. 64; see also Def.-Inter.'s Br. The Government

submitted its Reply to the comments on September 16, 2022. See Def.'s Resp. to Cmts. Regarding

the Remand Redetermination, Sept. 16, 2022, ECF No. 65. ZA Sea Foods filed its Reply to

Domestic Shrimp's comments on the same day. See Pls.' Resp. to Cmts. on Remand Results of

AHSTAC, Sept. 16, 2022, ECF No. 66.

## STANDARD OF REVIEW

The court sustains Commerce's determinations, findings, and conclusions on remand

unless they are unsupported by substantial evidence, or otherwise not in accordance with law. 19

U.S.C. § 1516a(b)(1)(B); SeAH Steel VINA Corp. v. United States, 950 F.3d 833, 840 (Fed. Cir.

2020). In conducting its review, the court's function is not to reweigh the evidence but rather to

ascertain whether Commerce's determinations are supported by substantial evidence on the record.

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed. Cir. 1984). The possibility

of drawing two inconsistent conclusions from the record evidence does not, in itself, prevent

Commerce's determinations from being supported by substantial evidence. SeAH Steel VINA,

950 F.3d at 843 (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In addition,

the court reviews redeterminations after remand for compliance with the court's remand order.
Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1402
(2018), aff'd, 779 F. App'x 744 (Fed. Cir. 2019).

## DISCUSSION

Domestic Shrimp submits that the Remand Redetermination is contrary to law, and that it
is unsupported by substantial evidence. Def.-Inter.'s Br. at 15–16. Domestic Shrimp does not
explicitly dispute compliance with the court's remand order. See id.

As a preliminary matter, the court addresses the adequacy of Domestic Shrimp's
arguments. In essence, Domestic Shrimp's arguments are anchored around two words contained
in the statute, "for consumption." Id. at 1, 5–15. The central premise of Domestic Shrimp's
argument is that in calculating normal value, Commerce should not default to a presumption that
the merchandise was consumed in the third country market because the "statutory framework"
requires Commerce to make specific findings on this statutory criterion. Id. at 6–10. Domestic
Shrimp further argues that the court's remand order did not address this issue and thus did not
preclude Commerce from addressing it. Id. at 6. According to Domestic Shrimp, the evidence
before Commerce refutes any presumption Commerce may make contrary to Domestic Shrimp's
position, and the burden of proof shifts to ZA Sea Foods because Domestic Shrimp has rebutted
the presumption. Id. at 10–11.

Yet regarding the central issue, that is, the statutory language "for consumption" and the
statutory framework on Commerce's ability to make presumptions and allocate the burden of
proof, Domestic Shrimp has not provided adequate argument. See id. at 6–16. It does not discuss
the relevant case law or Commerce practice interpreting the phrase "for consumption" in the
specific context of third country determinations and Commerce's ability to make presumptions in

market viability analysis.  Id.  Nor does Domestic Shrimp offer any other authority, such as the

textual meaning and legislative history relevant to its position.  Id.  In essence, Domestic Shrimp's

argument and briefing consist of no more than repeated assertions that the statute should be

interpreted and applied in a certain way, without identifying the relevant authorities supporting

those bare assertions. [4]

It is "well established that arguments . . . not appropriately developed in a party's briefing

may be deemed waived."  United States v. Great Am. Ins. Co. of New York, 738 F.3d 1320, 1328

(Fed. Cir. 2013) (citations omitted); see also SmithKline Beecham Corp. v. Apotex Corp., 439

F.3d 1312, 1320 (Fed. Cir. 2006) ("[M]ere statements of disagreement with the district court's

determination . . . do not amount to a developed argument.").  Issues that are "adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived."  Baley v. United States, 942 F.3d 1312, 1331 (Fed. Cir. 2019) (citing United States v.

Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  Where the issue involves statutory interpretation, if the

party does not present adequate argumentation on the rules of statutory interpretation, "that misstep

---

[4] Although Domestic Shrimp cites Rhone Poulenc, Inc. v. United States, 899 F.2d 1185 (Fed. Cir. 1990) and KYD, Inc. v. United States, 607 F.3d 760 (Fed. Cir. 2010), these cases are not relevant to the question before the court.  Def.-Inter.'s Br. at 10–11.  So-called "Rhone Poulenc presumptions" are "common sense inferences" that can be drawn from the highest prior margin when Commerce relies on adverse facts available ("AFA") due to a respondent's failure to provide information.  KYD, 605 F.3d at 767.  Thus, the applicability of a Rhone Poulenc presumption is limited to situations involving AFA determinations due to the party failing to cooperate with the investigation.  See id.; see also Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 38 CIT __, __, 991 F. Supp. 2d 1322, 1331 (2014).  This is distinguishable from the current case that does not involve any such AFA determinations.

Moreover, Rhone Poulenc was a pre-URAA case that reflected the state of the law prior to the substantial modification of the statutory provisions in Chapter 19 of the United States Code.  See Tianjin Mach. Imp. & Exp. Corp. v. United States, 35 CIT 1, 13–14, 752 F. Supp. 2d 1336, 1347–48 (2011) (citing Gerber Food (Yunnan) Co. v. United States, 31 CIT 921, 947, 491 F. Supp. 2d 1326, 1351 (2007)).  Thus, Rhone Poulenc offers little guidance for the presumption at issue here, which involves interpretation of a term introduced in section 1677b by the URAA.  See Pub. L. No. 103-465, § 224, 108 Stat. 4809, 4878–79; see also infra note 5.

warrants a finding of waiver." <u>Nan Ya Plastics Corp. v. United States</u>, 810 F.3d 1333, 1347 (Fed.

Cir. 2016); <u>see also</u> <u>Zhejiang Sanhua Co. v. United States</u>, 39 CIT __, __, 61 F. Supp. 3d 1350,

1358 (2015) (holding that a party before the CIT waived its arguments when relevant authorities

and analytical framework had not been presented).

 Even though Domestic Shrimp cites to the statute and repeatedly asserts a certain theory of

the statutory framework, the citations and assertions alone do not constitute adequate argument.

<u>See</u> <u>Trading Techs. Int'l, Inc. v. IBG LLC</u>, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (holding that a

conclusory assertion citing the Seventh Amendment, separation of powers under Article III, the

Due Process Clause, and the Taking Clause, without analysis, is insufficient to preserve the issue);

<u>Baley</u>, 942 F.3d at 1331 n.20 (Fed. Cir. 2019) ("[C]ursory mention of [congressionally-approved

interstate Compact between California and Oregon] is insufficient to preserve any separate

arguments pertaining to the Compact." (internal citation omitted)); <u>Zhejiang Sanhua</u>, 61 F. Supp.

3d at 1357–58 (holding that "naked citation" to statute and two CIT cases, while failing to address

several other decisions interpreting statute, warrants waiver).  Therefore, Domestic Shrimp's

arguments flounder in light of its undeveloped analysis on the underlying question of statutory

interpretation.[5]

---

[5] Today's decision does not resolve whether third market consumption is among "the category of issues that the Department need not, and should not, routinely consider" in market viability analysis. <u>Preamble</u>, 62 Fed. Reg. at 27,357.  It is unclear whether third market consumption should be analyzed independently, as Domestic Shrimp now argues, or whether the consumption issue is a subcategory or precondition of the "representativeness" test as stated in the pre-remand <u>Final Results</u>, to which Domestic Shrimp originally agreed.  <u>See</u> IDM at 19; Def.-Inter.'s Resp. to Pls.' Mot. for J. at 16, Sept. 2, 2021, ECF No. 30 (quoting IDM at 19).  Also unresolved is the meaning of "for consumption," which is undefined in the statute, and whether Commerce's interpretation of the term merits deference under <u>Chevron U.S.A., Inc. v. Nat. Res. Def. Council</u>, 467 U.S. 837 (1984).

## CONCLUSION

For the foregoing reason, the court sustains Commerce's <u>Remand Redetermination</u>.

Judgment will enter accordingly.

**SO ORDERED.**

<u>/s/    Gary S. Katzmann</u>
Gary S. Katzmann, Judge

Dated:  <u>December 6, 2022</u>
            New York, New York

Slip Op. 22-36

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LTD., | |
| Plaintiffs, | Before: Gary S. Katzmann, Judge<br>Court No. 21-00031 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Defendant-Intervenor. | |

[The court grants Plaintiffs' motion for judgment upon the agency record and remands for further action.]

Dated:  April 19, 2022

Robert G. Gosselink, Trade Pacific PLLC, of Washington, D.C., argued for Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited. With him on the joint briefs was Jonathan M. Freed.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director,

and Patricia M. McCarthy, Assistant Director.  Of Counsel Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance.

Zachary J. Walker, Picard, Kentz & Rowe, LLP, of Washington, D.C., argued for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.  With him on the briefs was Nathaniel Maandig Rickard.

Katzmann, Judge:  The question presented by this case is whether the U.S. Department of Commerce ("Commerce") was permitted to employ constructed value as the basis for normal value in its administrative review of the antidumping duty ("AD") order covering certain frozen warmwater shrimp from India that had been imported into the United States at less than fair value in derogation of fair competition with domestic producers.[1]  Plaintiffs, all foreign producers and exporters in India of the subject merchandise, argue that Commerce's use of constructed value was in error because the facts do not support Commerce's rejection of Vietnam as a third country market through which normal value might have been ascertained.[2]  Defendant, the United States ("the Government"), and domestic producers, Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), contend that Commerce correctly found that the Vietnamese sales data provided by Plaintiffs was not representative (as required by 19 U.S.C. § 1677b(a)(1)(B)(ii)(I)) and therefore unsuitable for purposes of calculating normal value.  The court concludes that Commerce's use of constructed value was unsupported by substantial evidence.  Accordingly, the

---

[1] The AD order on frozen warmwater shrimp from India was issued in February 2005 and includes within its scope "warmwater shrimp and prawns, whether frozen, wild-caught (ocean harvested) or farm-raised (produced by aquaculture), head-on or head-off, shell-on or peeled, tail-on or tail-off, deveined or not deveined, cooked or raw, or otherwise processed in frozen form."  Notice of Am. Final Determ. of Sales at Less Than Fair Value and AD Order: Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5,147, 5,148 (Dep't Commerce Feb. 1, 2005).

[2] Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Private Limited, Hari Marine Private Limited, Magnum Export, Megaa Moda Private Limited, Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines and Zeal Aqua Limited will be referred to as "Plaintiffs" or "ZASF" throughout for ease of reference.

court remands the administrative review determination to Commerce for further proceedings consistent with this opinion.

## BACKGROUND

### I.    *Legal & Regulatory Framework*

The Tariff Act of 1930 authorizes Commerce to investigate alleged dumping and, if dumping is found, levy duties on the implicated goods.  <u>Sioux Honey Ass'n v. Hartford Fire Ins.</u>, 672 F.3d 1041, 1046 (Fed. Cir. 2012).  Dumping occurs when a foreign company sells a product in the United States for less than its fair value.  19 U.S.C. § 1673.  When investigating whether goods are being dumped, Commerce must therefore first determine whether a good is being sold at less than its fair value.  <u>Id.</u>; 19 U.S.C. § 1677b(a).  To do so, Commerce compares the export price or constructed export price (export price adjusted for various additional expenses pursuant to 19 U.S.C. § 1677a(c)–(d)) of the merchandise with its normal value.  19 U.S.C. § 1677b(a).  Ultimately, if dumping is found, the duty imposed will be equal to the difference between these two prices (also known as the "dumping margin").  <u>Id.</u>

The statute provides three methods for the calculation of normal value.  By default, Commerce calculates normal value by averaging the price at which the exported good (or a like good) is sold for consumption in its home market.  19 U.S.C. § 1677b(a)(1)(B)(i).  If the good (or a like good) is not offered for sale in its home market, or if the home market sales are equal to less than five percent of the aggregate U.S. sales, Commerce may instead average the good's prices in a third country.  19 U.S.C. § 1677b(a)(1)(C).  Specifically, a third country sales price may be considered for purposes of normal value calculation when:

    (i)    the foreign like product is not sold (or offered for sale) for consumption in the exporting country […],

    (ii)   the administering authority determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product

> sold in the exporting country is insufficient to permit a proper
> comparison with the sales of the subject merchandise to the United
> States, or
>
> (iii)   the particular market situation in the exporting country does not
> permit a proper comparison with the export price or constructed
> export price.

<u>Id.</u>  The third country price must further be (1) representative; (2) reflective of third country sales in excess of five percent of the aggregate U.S. sales; and (3) not unavailable for proper comparison due to a particular market situation in the third country.  19 U.S.C. § 1677b(a)(1)(B)(ii).  Finally, if the home market cannot be used to calculate normal value, and notwithstanding the availability of third country sales data, Commerce may determine the product's normal value by calculating its constructed value.  19 U.S.C. § 1677b(a)(4).  Constructed value is calculated by summing the costs of production and processing of the product, and the costs incurred by the exporter under investigation (or other representative exporters under investigation) in the course of the export and sale of the product.  19 U.S.C. § 1677b(e).

Commerce's regulations further specify the process for calculation of normal value.  In relevant part, they provide:

> (b) **Determination of viable market** -
>
> (1) **In general**. [Commerce] will consider the exporting country or a third
> country as constituting a viable market if [Commerce] is satisfied that sales
> of the foreign like product in that country are of sufficient quantity to form
> the basis of normal value.
>
> (2) **Sufficient quantity**. "Sufficient quantity" normally means that the
> aggregate quantity (or, if quantity is not appropriate, value) of the foreign
> like product sold by an exporter or producer in a country is 5 percent or
> more of the aggregate quantity (or value) of its sales of the subject
> merchandise in the United States.
>
> (c) **Calculation of price-based normal value in viable market** -
>
> (1)   **In general**. Subject to paragraph (c)(2) of this section:

(i)    If the exporting country constitutes a viable market, [Commerce] will calculate normal value on the basis of price in the exporting country (see [19 U.S.C. § 1677b(a)(1)(B)(i)] (price used for determining normal value)); or

(ii)   If the exporting country does not constitute a viable market, but a third country does constitute a viable market, [Commerce] may calculate normal value on the basis of price to a third country (see [19 U.S.C. § 1677b(a)(1)(B)(ii)] (use of third country prices in determining normal value)).

(2)    **Exception**. [Commerce] may decline to calculate normal value in a particular market under paragraph (c)(1) of this section if it is established to the satisfaction of the Secretary that:

(i)    In the case of the exporting country or a third country, a particular market situation exists that does not permit a proper comparison with the export price or constructed export price (see [19 U.S.C. § 1677b (a)(1)(B)(ii)(III) or (a)(1)(C)(iii)]); or

(ii)   In the case of a third country, the price is not representative (see [19 U.S.C. § 1677b(a)(1)(B)(ii)(I)]).

19 C.F.R. § 351.404(c).  Finally, 19 C.F.R. § 351.404(f) provides that Commerce "normally will calculate normal value based on sales to a third country rather than on constructed value if adequate information is available and verifiable."

Representativeness, as required by 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) and 19 C.F.R. § 351.404(c)(2)(ii), is not defined by statute or regulation. Alloy Piping Prod., Inc. v. United States, 26 CIT 330, 334; 201 F. Supp. 2d 1267, 1272 (2002), aff'd sub nom. Alloy Piping Prod., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284 (Fed. Cir. 2003).  Nevertheless, it is well-established that "where the aggregate quantity of third country sales are at a sufficient level, those sales are presumptively representative unless demonstrated otherwise." Husteel Co. v. United States, 45 CIT __, __, 520 F. Supp. 3d 1296, 1304 (2021) (citing 19 C.F.R. § 351.404(b)–(c)).  A party seeking to establish that sales are not representative bears the burden of making such a showing. Antidumping Duties, Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,357 (Dep't

Commerce May 19, 1997) ("Preamble").  Any determination that the proposed third country sales are not representative must be supported by substantial evidence on the record.  Husteel, 520 F. Supp. 3d at 1305 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 48–49 (1983)).

## II.    Factual & Procedural Background

The administrative review at issue in these proceedings was initiated on May 2, 2019 for the period of review beginning February 1, 2018 and ending January 31, 2019.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 18,777, 18,778 (Dep't Commerce May 2, 2019) (P.R. 16) ("Initiation").  ZASF was selected as a mandatory respondent.[3]   IDM at 1.  In its response to Commerce's Section A questionnaire, ZASF acknowledged that its home market sales constitute less than five percent of the volume of its U.S. sales, and therefore cannot provide a viable basis for normal value.  Letter from ZASF to Sec'y Commerce re: ZASF's Section A Questionnaire Resp. in the AD Order on Certain Frozen Warmwater Shrimp from India at A-3–A-4, Sept. 16, 2019 (P.R. 114–121, C.R. 28–31).  ZASF

---

[3] In AD investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f–1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to-
>
> > (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
> >
> > (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

further identified Vietnam as its largest third country market, and noted the similarity between its

U.S- and Vietnam-bound merchandise.  Id. at A-4.

Following the submission of ZASF's Section A questionnaire response, then-petitioner and

now-Defendant-Intervenor AHSTAC, submitted additional publicly-available information to

Commerce in an attempt to "rebut, clarify, or correct factual information" provided by ZASF.

Letter from AHSTAC to Wilbur L. Ross, Jr. re: Certain Frozen Warmwater Shrimp from India:

Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification

at 2–3 (Sept. 26, 2019) (P.R. 94) ("AHSTAC Comments").  In its submission, AHSTAC noted

that (1) "the overwhelming majority" (101 out of 152) of ZASF's shipments to Vietnam were to

Vietnamese shrimp exporters who were at various points subject to an AD order on certain frozen

warmwater shrimp from Vietnam, and (2) "[r]oughly 60 percent of ZASF's shipments to Vietnam

(91 of 152) were to three companies that, in part, comprise the Minh Phu Group: (1) Minh Phat

Seafood Co., Ltd.; (2) Minh Phu Hao Giang Seafood Corp.; and (3) Minh Phu Seafood Corp."  Id.

at 3–4 (citations omitted).  AHSTAC went on to explain that the Minh Phu Group was previously

subject to the AD order on certain frozen warmwater shrimp from Vietnam,[4] and in the course of

its participation in that investigation, reported to Commerce that it "imported shrimp from other

countries and used this shrimp as a raw material input in its exports to the United States."  Id. at 5.

In light of these facts, AHSTAC concluded it was "likely that not only are ZASF's shrimp

shipments to Vietnam consumed in other markets, but that ZASF's merchandise sold through

Vietnam was resold or shipped to the United States," and argued that Commerce was thus owed a

---

[4] The AD order on certain frozen warmwater shrimp from Vietnam was revoked with respect to the Minh Phu Group prior to the period of review in the instant case.  Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Notice of Implementation of Determination Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping Duty Order, 81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016).

"more fulsome and comprehensive explanation" of why ZASF's submitted invoice, bill of lading, and shipping documents were sufficient to prove the ultimate market for its shrimp, and why ZASF claimed to be unaware of any resale or re-shipment of its shrimp from Vietnam to the United States. Id. at 7.

On March 6, 2020, Commerce issued the preliminary results of its administrative review. Certain Frozen Warmwater Shrimp From India: Prelim. Results of AD Admin. Rev.; 2018–2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) (P.R. 169) ("Preliminary Results"). In the accompanying memorandum, Commerce agreed with ZASF that its home market sales did not provide a viable basis for the calculation of normal value. Mem. from J. Maeder to J. Kessler re: Decision Mem. for the Prelim. Results of the 2018–2019 Admin. Rev. of the AD Order on Certain Frozen Warmwater Shrimp from India at 9 (Dep't Commerce Feb. 27, 2020) (P.R. 166) ("PDM"). Commerce went on to preliminarily find that, while Vietnam "satisf[ied] the regulatory criteria for third country market selection under 19 C.F.R. 351.404(e)(1) and (2)," ZASF's "sales to Vietnam [were] not appropriate for consideration as comparison sales to establish [normal value] in this review." Id. In support of its finding, Commerce relied upon "the trade patterns evidenced by [ZASF's] customers in Vietnam" -- namely, the fact that ZASF's "customers are also known processors and exporters of shrimp to the United States." Id. (citing AHSTAC Comments). Accordingly, Commerce preliminarily employed constructed value to calculate the normal value of the subject merchandise. Id. at 11. The constructed value of the merchandise was based on the financial statements of Indian producers and exporters involved in the immediately preceding (i.e., 2016–2017) administrative review. Id. at 11–12.

On October 13, 2020, U.S. Customs and Border Protection ("CBP") issued an Enforce and Protect Act ("EAPA") determination finding that merchandise subject to the AD order on frozen

warmwater shrimp from India was being illegally transshipped into the U.S. through Vietnam. Notice of Determ. as to Evasion (Customs and Border Protection Oct. 13, 2020) (P.R. 187 Att. 1) ("EAPA Determination").  In its determination, CBP noted that the Minh Phu Group "purchased Indian-origin shrimp for processing and supplemented orders to the United States with Indian-origin shrimp." Id. at 4.  It explained that, because Indian-origin shrimp are subject to AD duties while Vietnamese-origin shrimp are not, the Minh Phu Group thus "has sufficient reason to disguise the true country of origin of its shrimp or to comingle Indian-origin shrimp with Vietnamese-origin shrimp and claim only Vietnam as the country of origin." Id.  Although CBP acknowledged that the Minh Phu Group claims to maintain a "tracing system [which] ensures that imported shrimp never loses its identity as such," it also noted the Minh Phu Group's "inability to trace specific imports of Indian-origin shrimp through the production facility to specific sales," as well as its inadvertent one-time export of "commingled Indian-origin and Vietnamese-origin shrimp into the customs territory of the United States." Id. at 6–7.  Ultimately, because specific orders of imported shrimp could not be traced to specific orders of exported shrimp, CBP concluded that the Minh Phu Group had failed to cooperate to the best of its abilities with the EAPA investigation, and applied adverse inferences to reach a finding of evasion. Id. at 9–10.  On October 27, 2020, the public version of CBP's EAPA determination was placed on the record in Commerce's administrative review.  Mem. from B. Bauer to File re: U.S. Customs and Border Protection Dec. (Dep't Commerce Oct. 27, 2020) (P.R. 187).

Commerce issued its final results of AD administrative review on December 29, 2020. Certain Frozen Warmwater Shrimp From India: Final Results of AD Admin. Rev. and Final Determ. of No Shipments; 2018–2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) (P.R. 199) ("Final Results"); see also Mem. from J. Maeder to J. Kessler re: Issues and Decision

Mem. for the Final Results of the 2018–2019 AD Admin. Rev. of Certain Frozen Warmwater Shrimp from India (Dept' Commerce Dec. 21, 2020) (P.R. 194) ("IDM").  In the Final Results, Commerce continued to use constructed value to calculate the normal value of the subject merchandise.  IDM at 15–21.  Commerce reiterated that there was "sufficient cause to use [constructed value]" for the reasons given in the PDM, but noted that there was "now additional information available on the record supporting the unsuitability of using sales to Vietnam to establish a comparison price for U.S. sales." Id. at 15.  The additional information in question was the CPB EAPA determination.  Id. at 16.  Commerce acknowledged that ZASF might well have had no knowledge of the Minh Phu Group's transshipment, but found that would nevertheless be "unreasonable to use [ZASF's] Vietnamese sales, which include sales to the Minh Phu Group, as the comparison market."  Id. at 19.  In particular, Commerce noted that such a comparison would ultimately "compare U.S. sales to U.S. sales" and that any "worthwhile, profitable, and price competitive" transshipment scheme would necessitate a price advantage for the Vietnamese sales over the U.S. sales.  Id.  Finally, Commerce clarified that even if Vietnam were a viable third country market for the subject merchandise, neither 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) nor 19 C.F.R. § 351.404 specify a preference for relying upon third country sales over constructed value where the sales are otherwise not representative.  Id. at 19–20.

        Plaintiffs ZASF initiated these proceedings on January 29, 2021 to challenge Commerce's Final Results.  Summons, Jan. 28, 2021, ECF No. 1.  On June 18, 2021, ZASF filed a Rule 56.2 motion for judgment upon the agency record, arguing that Commerce's decision to employ constructed value and not the Vietnamese third country market prices as the basis for the subject merchandise's normal value was unsupported by substantial evidence and not accordance with law.  Mem. in Supp. of the Rule 56.2 Mot. of Pls.' for J. Upon the Agency R. at 7-8, June 18, 2021,

ECF No. 26 ("Pls.' Br."). The Government and AHSTAC filed their response briefs to ZASF's motion on September 2, 2021. Def.'s Resp. to Pls.' Mot. for J. Upon the Agency R., Sept. 9, 2021, ECF No. 31 ("Def.'s Br"); Def.-Inter. AHSTAC's Resp. to Pls.' Mot. for J. on the Agency R., Sept. 2, 2021, ECF. No. 30 ("Def.-Inter.'s Br."). Plaintiffs replied on October 5, 2021. Pls.' Reply to Def. and Def.-Inter.'s Resps. to Pls.' Mot. For J. on Agency R., ECF No. 34 ("Pls.' Reply"). The court subsequently issued and the parties responded to questions for oral argument. Letter re: Questions for Oral Arg., Jan. 6, 2022, ECF No. 49; Pls.' Resp. to Ct.'s Questions for Oral Arg., Jan. 19, 2022, ECF No. 50 ("Pls.' Suppl. Br."); Def.'s Resp. to Ct.'s Questions for Oral Arg., Jan. 19, 2022, ECF No. 52 ("Def.'s Suppl. Br."); Def.-Inter.'s Resp. to Ct.'s Questions for Oral Arg., Jan. 19 2022, ECF No. 51 ("Def.-Inter.'s Suppl. Br."). Oral argument was held on January 25, 2022. Oral Arg., ECF No. 54. Following oral argument, the parties submitted additional briefing on the issues. Pls.' Suppl. Post-Arg. Submission, Feb. 1, 2022, ECF No. 57 ("Pls.' Post-Arg. Br."); Def.'s Suppl. Post-Arg. Submission, Feb. 1, 2022, ECF No. 55 ("Def.'s Post-Arg. Br."); Def.-Inter.'s Post-Arg. Submission, Feb. 1, 2022, ECF No. 56 ("Def.-Inter.'s Post-Arg. Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 19 U.S.C. § 1516a(a)(2)(B)(i). The standard of review is provided by 19 U.S.C. § 1516a(b)(1)(B)(i), which states that "[t]he court shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."[5] For an agency's determination to be supported by

---

[5] Substantial evidence is "more than a mere scintilla" and amounts to what a "reasonable mind might accept as adequate to support a conclusion." Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of the evidence must also "take into account whatever in the

substantial evidence, the agency must "articulate [a] rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).

## DISCUSSION

ZASF now disputes Commerce's reliance on constructed value in its calculation of the normal value of frozen warmwater shrimp from India. Arguing that Commerce should instead have based normal value on the Vietnamese third country sale price, ZASF alleges (1) that Commerce's rejection of Vietnam was unsupported by substantial evidence; (2) that Commerce's failure to comply with the regulatory preference for third country sales data was contrary to law; and (3) that Commerce's failure to apply a "knowledge test" in its consideration of Vietnamese sales was contrary to Commerce practice. The Government and AHSTAC contend that Commerce's decision to reject Vietnam as a potential third country market was supported by substantial evidence, and that Commerce's reliance on constructed value was in accordance with law. The court concludes that Commerce's decision to reject the Vietnamese third country sales data was not adequately supported by record evidence, but that Commerce's interpretation of the regulatory preference order and rejection of the proposed knowledge test were each in accordance with law. Accordingly, Commerce's Final Results are remanded for further explanation.

### I.    Commerce's Rejection of the Vietnamese Third Country Sales Data and Reliance on Constructed Value was Unsupported by Substantial Evidence

ZASF first argues that Commerce erred by rejecting the Vietnamese third country market data because substantial evidence does not support a determination that ZASF's Vietnamese sales were unrepresentative. Pls.' Br. at 15–18, 22–26. Contending that Vietnam was a viable third country market under 19 C.F.R. § 351.404(b), ZASF argues that its "third-country sales to Vietnam

─────────────────

record fairly detracts from its weight." CS Wind Viet. Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)).

were presumptively representative" and Commerce failed to bear its burden of establishing "that ZASF's Vietnamese selling prices were not representative." Pls.' Br. at 15. ZASF specifically contests (1) Commerce's determination that ZASF's Vietnamese sales were part of an evasion scheme as set out in CBP's EAPA determination; and (2) Commerce's reliance on the trade patterns of ZASF's customers; and argues that neither provides sufficient basis to conclude that the Vietnamese sales were unrepresentative.[6] Id. at 15–18; 22–26.

### A.    The Evasion Scheme Evidence

In its IDM, Commerce primarily relied upon CBP'S EAPA determination of evasion to conclude that ZASF's Vietnamese sales were unrepresentative. Commerce specifically stated that "[g]iven that CBP found sales made by the Minh Phu Group during the [period of review] were ultimately sold in the United States, it would be unreasonable to use [ZASF's] Vietnamese sales, which include sales to the Minh Phu Group, as the comparison market. Some of these sales ultimately entered the United States and are an unsuitable comparison for [ZASF's] own sales to the United States. Such a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market." IDM at 19. In support of this conclusion, Commerce further noted that "[t]he prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp is exported for further processing." Id. Accordingly, Commerce found that ZASF's Vietnamese sales to the Minh Phu Group were unrepresentative, and that the Vietnamese third country market data could not serve as the basis for calculation of normal value.

---

[6] ZASF also argues that "Commerce failed to consider contradictory evidence that ZASF's sales to Vietnam were representative." Pls.' Br. at 24. As the court has concluded that Commerce inadequately supported its determination as to the Vietnamese sales, it need not address this further argument regarding Commerce's analysis.

ZASF now challenges Commerce's rejection of the Vietnamese data, arguing that "CBP's EAPA [d]etermination did not find that the Minh Phu Group channeled ZASF merchandise to the United States . . . [a]nd no other information collected by Commerce established that any ZASF merchandise sold to Vietnam ended up in the United States." Pls.' Br. at 19. ZASF also notes that "Commerce's claim that the Indian-origin shrimp that the Minh Phu Group shipped to the United States was 'exported without further processing' is contradicted throughout the EAPA [d]etermination" id. at 23 (quoting IDM at 19), and that no record evidence supports Commerce's conclusion that "'the prices to Vietnam are in fact prices for sales that eventually become U.S. sales' and 'do not represent prices of sales made for consumption in Vietnam'" id. at 24 (quoting IDM at 19).

The court concludes that, with respect to the EAPA determination, Commerce failed to support its conclusion that ZASF's Vietnamese sales were unrepresentative with substantial evidence. First, as ZASF notes, ZASF itself is not mentioned in the EAPA determination. Indeed, the text of the determination indicates that multiple Indian suppliers export shrimp to the Minh Phu Group. EAPA Determination at 4–5; Pls.' Reply at 10. It is therefore not apparent from what evidence Commerce reached its conclusion that "some of [ZASF's] sales ultimately entered the United States." IDM at 19. Second, it is not clear on what basis Commerce determined that "sales made by the Minh Phu Group during the [period of review] were ultimately sold in the United States." Id. While the EAPA determination did find that the Minh Phu Group participated in an evasion scheme, that finding corresponded to the period of investigation October 8, 2018 through October 13, 2020, and identified only one undated instance of the commingling of Vietnamese- and Indian-origin shrimp. EAPA Determination at 4–7. In contrast, Commerce's review of the AD order on frozen warmwater shrimp from India spanned the period from February 1, 2018

through January 31, 2019.  Initiation, 84 Fed. Reg. at 18,778.  Commerce identifies no support for

its conclusion that, despite only a three-month overlap with the EAPA investigation, transshipment

must have occurred during the administrative review period.   Finally, Commerce fails to

acknowledge or address the fact that the EAPA determination was ultimately predicated on an

adverse inference resulting from the Minh Phu Group's failure to cooperate to the best of its ability

with CBP's request for information.  EAPA Determination at 9.  Indeed, CBP acknowledged that

it relied on the absence of evidence (1) that transshipment did not occur, and (2) of "how many

imports to the United States contained comingled Indian-origin and Vietnamese-origin shrimp."

Id. (emphasis added).   Commerce thus fails to articulate a reasoned connection between the

underlying facts and its conclusion that ZASF's shrimp exports were comingled and re-exported

to the U.S. by the Minh Phu Group during the period of review.  See, e.g., Burlington Truck Lines,

371 U.S. at 168.

Nor does the EAPA determination clearly support Commerce's determination that the

Minh Phu Group performed "no such further processing" on Indian-origin shrimp exported to the

U.S.  IDM at 19.  The Government contends in its brief that "such . . . processing" refers only to

processing which "would take Minh Phu Group's shrimp exports outside of the scope of the

antidumping order on shrimp," and concludes that "Commerce reasonably determined that

[ZASF's] sales to Vietnam were subsumed in Minh Phu Group's transshipment scheme."  Def.'s

Br. at 13–14.  While CBP did identify one exported shipment of comingled Indian- and

Vietnamese-origin shrimp which was not further processed, and thus illegally evaded Commerce's

AD order on warmwater shrimp from India, it is not clear how Commerce concluded from this

finding that the Minh Phu Group performed "no" further processing on its Indian-origin shrimp.

EAPA Determination at 7; see generally IDM at 17–19.  Indeed, the EAPA determination

explicitly states that "[e]vidence on the record shows that [the Minh Phu Group] has a history of importing Indian-origin shrimp into Vietnam for processing," EAPA Determination at 4 (citation omitted).  Given Commerce's failure to address this apparently conflicting information, and to adequately explain how the cited record evidence supports its conclusion with respect to the processing of ZASF's shrimp exports, the court cannot determine that Commerce's findings are supported by substantial evidence.  See CS Wind Viet. Co., 832 F.3d at 1373 (requiring Commerce's determinations to be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and to "take into account whatever in the record fairly detracts from its weight" (first quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951), and then quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997))).

## B.    The Trade Pattern Evidence

Although Commerce did not elaborate on the trade pattern data challenged by ZASF in the IDM accompanying its Final Results, it reiterated that because of its "concerns regarding the nature of the Vietnamese sales," it found "sufficient cause" to disregard those third country sales and employ constructed value in the Preliminary Results.  IDM at 15.  The concerns in question were those raised by AHSTAC in its comments on ZASF's Section A questionnaire response "about the nature and the ultimate destination of sales ZA Sea Foods made to Vietnam, given that ZA Sea Foods' customers are also known processors and exporters of shrimp to the United States."  PDM at 9 (citing AHSTAC Comments).  Deeming ZASF's customers' U.S. dealings "such other factors as [it] considers appropriate" for the assessment of a third country market, 19 C.F.R. § 351.404(e)(3), Commerce concluded that ZASF's Vietnamese sales were "not appropriate for consideration as comparison sales to establish [normal value]."  PDM at 9.

ZASF now disputes Commerce's determination that the trade patterns of ZASF's customers constituted substantial evidence that ZASF's sales could not be used to calculate normal value. In pertinent part, ZASF alleges that "[e]ven if the trade patterns were relevant . . . Commerce's conclusions were not supported by substantial evidence" because "[n]othing on the administrative record establishes that the shrimp sold to Vietnam by ZASF" were not resold in Vietnam or processed into merchandise outside the scope of the AD order on frozen warmwater shrimp from India.[7] Pls.' Br. at 17.

The court concludes that, with respect to the trade pattern information deemed "sufficient" in the IDM, Commerce again failed to support its rejection of ZASF's proffered third country sales data with substantial evidence. As ZASF correctly notes, Commerce identified no record evidence (beyond the EAPA determination, which is insufficient for the reasons set out above) establishing "that the shrimp sold to Vietnam by ZASF was not resold in Vietnam . . . [or] processed into merchandise outside the scope of the antidumping duty order." Pls.' Br. at 17. The sum total of Commerce's explanation for rejecting the Vietnamese market prices on the basis of ZASF's customers' trade patterns is that "[ZASF] stated that its customers in Vietnam were processors or traders, and [AHSTAC] raised concerns about the nature and the ultimate destination of sales [ZASF] made to Vietnam, given that ZA Sea Foods' customers are also known processors and exporters of shrimp to the United States." PDM at 9. Without any evidence as to the reasonableness of AHSTAC's concerns, or indeed of the transshipment of subject merchandise sold to Vietnamese purchasers by ZASF during the period of review, the court concludes that

---

[7] ZASF also argues that "[b]ecause ZASF did not know the ultimate disposition of the shrimp products at the time of sale, it was unreasonable and irrelevant for Commerce to base any decision on the representativeness of ZASF's sales on the alleged trade patterns of ZASF's customers." Pls.' Br. at 17. This contention is addressed in detail in Section III below.

Commerce's determination of "sufficient cause" to reject the Vietnamese sales data was unsupported by substantial evidence.  IDM at 15.

As neither the EAPA determination nor the trade patterns of ZASF's customers provide adequate basis for Commerce's conclusion that the ZASF's Vietnamese sales were not representative, Commerce has failed to articulate a rational basis for its determination, and thus to support its representativeness determination with substantial evidence.  See Husteel, 520 F. Supp. 3d at 1304; Burlington Truck Lines, 371 U.S. at 168.    Accordingly, Commerce's representativeness determination cannot be sustained.

## II.    Commerce's Interpretation of 19 C.F.R. § 351.404's Regulatory Preference Was in Accordance With Law

In the interest of judicial economy, the court now proceeds to address ZASF's arguments regarding Commerce's methodology, beginning with Commerce's interpretation of 19 C.F.R. § 351.404.  ZASF contends that Commerce erred by finding "that its regulations not only do not state a preference for establishing normal value if home market sales are not available, but in fact support the use of CV over third country sales" when in reality, "19 C.F.R.§ 404(f) clearly establishes a preference for third country sales as the basis for normal value."  Pls.' Br. at 27.  Commerce's departure from this regulatory order of preference, ZASF concludes, was contrary to law.

The Government responds by arguing that "Commerce's determination to use constructed value is not, as [ZASF] claims, tantamount to a finding that the regulations state no preference for the use of third country prices over constructed value, which would contravene 19 C.F.R. § 351.404(f)."  Def.'s Br. at 21.  Instead, "Commerce explained that the statute and regulations permit the calculation of normal value based on constructed value as an alternative to third-country prices," which was necessary in the present case because ZASF's proposed third-country prices

could not "be used as a basis for normal value at all due to the EAPA decision." Id. (emphasis
added).

Setting aside for the moment the issues already identified with respect to Commerce's
determination of evasion, the Government is correct that Commerce's reliance on constructed
value did not violate any regulatory preference.  As Commerce explained, it did not make any
determination as to the viability of Vietnam as a third country market under 19 C.F.R. §
351.404(b).  IDM at 18–19.  Even if it had, such a finding would not obligate Commerce to rely
on third country sales to calculate normal value where the third country prices were otherwise
unrepresentative.  IDM at 19.  If substantial evidence had supported Commerce's conclusion that
the Vietnamese sales were not representative, 19 C.F.R. § 351.404(c)(2)(ii) clearly permits
Commerce to "decline to calculate normal value in a particular market if . . . in the case of a third
country, the price is not representative."  This exception does not conflict with 19 C.F.R. §
351.404(f)'s provision that Commerce "normally will calculate normal value based on sales to a
third country rather than on constructed value if adequate information is available and verifiable"
because, where the third country sales are demonstrably unrepresentative, they cannot constitute
adequate information for the calculation of normal value.  Accordingly, the court concludes that
Commerce's interpretation of its regulations was in accordance with law.

### III.   *Commerce's Decision Not to Apply a Knowledge Test Was in Accordance With Law*

Finally, the court addresses ZASF's argument that Commerce's failure to apply a
knowledge test in its treatment of ZASF's Vietnamese sales "contradicts long-standing practice."
Pls.' Br. at 18.  ZASF contends that "under longstanding and well-established Commerce practice:
(1) the seller's knowledge at the time of sale determines whether sales are U.S. sales transactions;
and (2) merchandise that is destined for a third country without any evidence establishing an actual

U.S. destination cannot be considered U.S. sales under the U.S. antidumping laws." Id. at 19. As ZASF was not aware of any downstream transactions wherein its merchandise was exported to the U.S., ZASF argues that its third country sales should not be considered sales to the U.S. (and thus unrepresentative) for purposes of normal value calculation. Pls.' Br. at 20–21. In support of its contention, ZASF cites Commerce's determinations in Certain Circular Welded Non-Alloy Steel Pipe from Mexico, 76 Fed. Reg. 36,086 (Dep't Commerce June 21, 2011) ("Mexican Standard Pipe") and Welded Line Pipe From the Republic of Korea, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) ("Korean Line Pipe") that because respondents had no knowledge of specific downstream sales to the U.S. the sales in question were properly considered home market sales, as well as the court's application of a knowledge test in Allegheny Ludlum Corp. v. United States, 24 CIT 1424, 215 F. Supp. 2d 1322 (2000). Pls.' Br. at 20; Pls.' Reply at 14–15. By failing to apply a knowledge test in the present case, ZASF contends, Commerce unlawfully disregarded sales which its past practice would not have been rejected based on the actions of ZASF's downstream purchasers. Pls.' Reply at 14.

Both the Government and AHSTAC argue that ZASF's proposed knowledge test applies only where Commerce is "determining whether to treat certain sales as U.S. sales" for purposes of calculating a dumping margin. Def.'s Br. at 18–19; see also Def.-Inter.'s Br. at 19. Where, as here, the relevant issue is the representativeness of third country sales, ZASF's "lack of knowledge regarding the transshipment scheme, or basically what the customer does with the product or pattern of trade, does not mitigate the fact that those sales were ultimately transshipped to the United States and by statute are inappropriate for use as a basis for normal value." Def.'s Br. at 17; see also Def.-Inter.'s Br. at 19. Accordingly, both the Government and AHSTAC argue that Commerce properly declined to apply a knowledge test in its analysis of the effect of downstream

U.S. exports on the representativeness of ZASF's third country sales. Def.'s Br. at 19–20; Def.-Inter.'s Br. at 19–20.

The Government and AHSTAC are correct. As the court explained in Allegheny Ludlum, Commerce employs a knowledge test under 19 U.S.C. § 1677b to determine whether a producer "knew or should have known that the merchandise was . . . for home consumption" such that the sales should be included in the home market database, and under 19 U.S.C. § 1677a to determine whether a producer "knew or should have known, at the time of a sale, whether or not the subject merchandise will be exported" such that the sale price should be considered the U.S. purchase price. 24 CIT at 1433 (quoting INA Walzlager Schaeffler KG v. United States, 21 CIT 110, 123–24, 957 F. Supp. 251, 264 (1997), aff'd 108 F.3d 301 (Fed.Cir.1997)). Put simply, the knowledge test described by ZASF is used to (1) exclude from Commerce's calculation of foreign market value and (2) include in Commerce's calculation of U.S. export price any sales a producer knew or should have known were for exportation to the U.S. See id.; INA Walzlager Schaeffler, 21 CIT at 123, 957 F. Supp. at 263 (discussing application of the knowledge test to determine whether sales may be included in the home market database); LG Semicon Co., Ltd. v. United States, 23 CIT 1074, 1999 WL 1458844 at *3 (1999) (discussing application of the knowledge test to determine inclusion of a product's sale price in the U.S. purchase price).

Neither knowledge test is applicable here. While Commerce did reject ZASF's proffered third country sales data because it determined that the Minh Phu Group's sales were ultimately U.S. sales, it did not treat ZASF's Vietnamese sales as U.S. sales for purposes of export price calculation under 19 U.S.C. § 1677a. See PDM at 8 (describing Commerce's export price calculations). Nor, clearly, did Commerce exclude any specific sales from its calculation of foreign market value, as it ultimately relied upon constructed value alone. Rather, Commerce

concluded that because the Minh Phu Group exported subject merchandise purchased from ZASF into the U.S., that merchandise was neither "sold (or offered for sale) for consumption in a [third country]" nor representative of such third country sales.  19 U.S.C. § 1677b(a)(1)(B)(ii); see also IDM at 19 (finding that ZASF's Vietnamese sales "are an unsuitable comparison for ZA Sea Foods' own sales to the United States" because "[s]uch a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market.")  ZASF provides no evidence that Commerce has previously applied a knowledge test in similar circumstances: in fact, both Mexican Standard Pipe and Korean Line Pipe address the inclusion of sales in a home market database, not a determination of unrepresentative sales.  See 76 Fed. Reg. at 36,088; 80 Fed. Reg. at 61,367.  As Commerce did not depart from any longstanding practice by declining to apply a knowledge test in the present case, the court concludes that its decision not to apply such a test was in accordance with law.

## CONCLUSION

For the foregoing reasons, while Commerce acted in accordance with law in interpreting 19 C.F.R. § 351.404 and declining to apply a knowledge test to its assessment of potential third country markets, it nevertheless failed to support its rejection of ZASF's Vietnamese sales data and use of constructed value with substantial evidence.  Neither Commerce's initial assessment of the record evidence nor its subsequent analysis of CBP's EAPA determination of evasion by ZASF's primary Vietnamese purchaser provide a rational basis for its conclusion that ZASF's Vietnamese sales were unrepresentative and thus unsuitable as a third country benchmark.  Accordingly, the court grants ZASF's motion for judgment on the agency record, and remands Commerce's calculation of normal value for further proceedings consistent with this opinion.  Commerce shall file with this court and provide to the parties its remand results within 90 days of

the date of this order; thereafter, the parties shall have 30 days to submit briefs addressing the revised remand determination with the court, and the parties shall have 30 days thereafter to file reply briefs with the court.

     **SO ORDERED.**

/s/    *Gary S. Katzmann*
Judge

Dated: _April 19, 2022_
     New York, New York

# U.S. Court of International Trade
## LIVE Database (New York)
## CIT DOCKET FOR CASE #: 1:21-cv-00031-GSK

Z.A. Sea Foods Private Limited et al v. United States
**Assigned to:** Gary S. Katzmann
**Lead Docket:**

**Jurisdiction:**
28USC § 1581(c) Antidumping or Countervailing Duty
Determination(s)

**Date Filed:** 01/27/2021
**Jury Demand:** No

**Date Terminated:** 12/06/2022

**Category:**
Final Determination: 751 Periodic Review 19USC § 1516a(a)(2)
(B)(iii)

**Date Reopened:**

**Does this action raise an issue of
constitutionality?:** N

**Agency:**
U.S. Department of Commerce

**Product Description:**
Certain Frozen Warmwater Shrimp

**Export Country:**
India

**Plaintiff**

**Z.A. Sea Foods Private Limited**

represented by **Robert George Gosselink**
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
(202) 223-3760
Fax  (202) 223 3763
Email: rgosselink@tradepacificlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**Aqmar Rahman**
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
(202) 679 1775
Fax: (202) 223-3763

Email arahman@tradepacificlaw com
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
Trade Pacific PLLC
700 Pennslyvania Avenue, SE
Suite 500
Washington, DC 20003
(202) 223 3760
Fax: (202) 223-3763
Email jfreed@tradepacificlaw com
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003-4356
(202) 223 3760
Fax: (202) 223-3763
Email khammer@tradepacificlaw com
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
Trade Pacific PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
(202) 223 3760
Email: ksugama@tradepacificlaw.com
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Plaintiff**

**B-One Business House Pvt. Ltd.**                    represented by

**Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**

(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status  ACTIVE***

**Plaintiff**

**Hari Marine Private Limited**                    represented by    **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Plaintiff**

**Magnum Export**                    represented by    **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status  ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Plaintiff**

**Megaa Moda Pvt. Ltd.**                    represented by    **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Appx0042**

## Plaintiff

**Milsha Agro Exports Private Limited**     represented by  **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

## Plaintiff

**Sea Foods Private Limited**     represented by  **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)

**Appx0043**

*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

<u>**Plaintiff**</u>

**Shimpo Exports Private Limited**               represented by   **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

<u>**Plaintiff**</u>

**Five Star Marine Exports Private**               represented by   **Robert George Gosselink**
**Limited**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Appx0044**

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Plaintiff**

**HN Indigos Private Limited**      represented by     **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
***Bar Status: ACTIVE***

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Plaintiff**

**RSA Marines**      represented by     **Robert George Gosselink**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***

**Appx0045**

*Bar Status: ACTIVE*

**Aqmar Rahman**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**Jonathan Michael Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**Kenneth Neal Hammer**
(See above for address)
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**MacKensie Ruth Sugama**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Plaintiff**

**Zeal Aqua Ltd.**                    represented by    **Robert George Gosselink**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        ***ATTORNEY IN SEALED GROUP***
                                                        *Bar Status: ACTIVE*

                                                        **Jonathan Michael Freed**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*
                                                        ***ATTORNEY IN SEALED GROUP***
                                                        *Bar Status: ACTIVE*

**Defendant**

**United States**                    represented by    **Kara Marie Westercamp**
                                                        U.S. Department of Justice
                                                        Commercial Litigation Branch - Civil
                                                        Division
                                                        P.O. Box 480
                                                        Ben Franklin Station
                                                        Washington, DC 20044
                                                        (202) 305-7571
                                                        Fax: (202) 514-8624
                                                        Email: kara.m.westercamp@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        ***ATTORNEY IN SEALED GROUP***
                                                        *Bar Status: ACTIVE*

**Christopher Alan Kimura**
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitutution Avenue, NW.
Washington, DC 20230
(202) 482-4378
Fax: (202) 482-4912
Email: christopher.kimura@trade.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Jesus Nieves Saenz**
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW.
Room 3629
Washington, DC 20230-0001
(202) 482-8184
Email: jesus.saenz@trade.gov
*TERMINATED: 03/18/2021*
*Bar Status: ACTIVE*

**Spencer Neff**
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW.
Suite A202
Washington, DC 20230
(240) 449-6105
Fax: (202) 482-8184
Email: spencer.neff@trade.gov
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*
*Bar Status: ACTIVE*

**Defendant-Intervenor**

**Ad Hoc Shrimp Trade Action Committee**    represented by   **Nathaniel Jude Maandig Rickard**
Picard, Kentz & Rowe, LLP
1750 K Street, NW.
Suite 1200
Washington, DC 20006
(202) 331-5040
Fax: (202) 331-4011
Email: nrickard@pkrllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*ATTORNEY IN SEALED GROUP*

*Bar Status: ACTIVE*

**Sophia J.C. Lin**
Picard, Kentz & Rowe, LLP
1750 K Street, NW.
Suite 800
Washington, DC 20006-2318
(202) 695-7624
Fax: (202) 331-4011
Email: slin@pkrllp.com
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**Zachary J. Walker**
Picard, Kentz & Rowe, LLP
1750 K Street, NW.
Suite 800
Washington, DC 20006-2318
(202) 888-0595
Fax: (202) 331-4011
Email: zwalker@pkrllp.com
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2021 | 1 | Summons . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 2 | Form 5 Information Statement . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 3 | Form 11 Notice of Appearance *of Robert Gosselink, Jonathan Freed, Kenneth Hammer, Aqmar Rahman, and MacKensie Sugama*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 4 | Form 13 Corporate Disclosure Statement . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 5 | Form 17 Business Proprietary Information Certification filed on behalf of Robert Gosselink, Jonathan Freed, Kenneth Hammer, Aqmar Rahman, MacKensie Sugama as Attorney/Consultant(s) . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 6 | Complaint against United States. Administrative Record due by 3/9/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 01/28/2021) |
| 01/28/2021 | 7 | Certificate of service . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/28/2021) |
| 01/29/2021 | 8 | Form 11 Notice of Appearance . Filed by Jesus Nieves Saenz of U.S. Department of Commerce on behalf of United States.(Saenz, Jesus) (Entered: 01/29/2021) |

**Appx0048**

| | | |
|---|---|---|
| 01/29/2021 | [9](#) | Form 11 Notice of Appearance . Filed by Jesus Nieves Saenz of U.S. Department of Commerce on behalf of United States (Saenz, Jesus) (Entered 01/29/2021) |
| 02/01/2021 | [10](#) | Form 24 Proposed Order for Statutory Injunction Upon Consent . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 02/01/2021) |
| 02/01/2021 | [11](#) | Order entered on 2/1/2021; Form 24 Order for Statutory Injunction Upon Consent Granted. (Goell, Geoffrey) (Entered 02/01/2021) |
| 02/02/2021 | [12](#) | Form 11 Notice of Appearance . Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States.(Westercamp, Kara) (Entered: 02/02/2021) |
| 02/02/2021 | [13](#) | Consent Motion to Intervene as defendant intervenor   Responses due by 2/23/2021   Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee (Rickard, Nathaniel) (Entered 02/02/2021) |
| 02/02/2021 | [14](#) | Form 11 Notice of Appearance *on behalf of Nathaniel Maandig Rickard, Zachary J. Walker, and Sophia J.C. Lin*. Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee.(Rickard, Nathaniel) (Entered: 02/02/2021) |
| 02/02/2021 | [15](#) | Form 13 Corporate Disclosure Statement   Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Rickard, Nathaniel) (Entered 02/02/2021) |
| 02/02/2021 | [16](#) | Form 17 Business Proprietary Information Certification filed on behalf of Nathaniel Maandig Rickard, Zachary J. Walker, and Sophia J.C. Lin as Attorney/Consultant(s) . Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Rickard, Nathaniel) (Entered: 02/02/2021) |
| 02/03/2021 | [17](#) | Order entered on 2/3/2021 Granting Ad Hoc Shrimp Trade Action Committee Consent Motion to intervene as Defendant-Intervenor (Related Doc # [13](#) ).. (Benbow, Troy) (Entered 02/03/2021) |
| 02/24/2021 | [18](#) | Order entered on 2/24/2021 assigning action to Judge Gary S. Katzmann.(Cheevers, Casey) (Entered: 02/24/2021) |
| 03/09/2021 | [19](#) | Administrative Record Index for Department of Commerce filed   Filed by Jesus Nieves Saenz of U.S. Department of Commerce on behalf of United States. (Attachments: # [1](#) Issues and Decision Memo, # [2](#) Final Fed Reg Notice, # [3](#) Declaration, # [4](#) BPI Index, # [5](#) Public Index)(Saenz, Jesus) (Entered: 03/09/2021) |
| 03/12/2021 | [20](#) | Form 11 Notice of Appearance . Filed by Spencer Neff of U.S. Department of Commerce on behalf of All Defendants.(Neff, Spencer) (Entered: 03/12/2021) |
| 03/16/2021 | [21](#) | Form 18A Notification of Termination of Government Attorney Access to Business Proprietary Information on behalf of   Filed by Jesus Nieves Saenz of U S Department of Commerce on behalf of United States. (Saenz, Jesus) (Entered: 03/16/2021) |
| 04/08/2021 | [22](#) | Joint status report and proposed briefing schedule. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 04/08/2021) |
| 04/12/2021 | [23](#) | Order entered on 4/12/2021 Scheduling Order: Plaintiffs shall file their motion for judgment on the agency record and supporting brief on or before 6/4/2021   Defendant and Defendant-Intervenor shall file their response briefs on or before 8/13/2021. Plaintiffs shall file their reply brief on or before 9/10/2021   Plaintiffs will file a joint appendix within 14 days of the date of filing of the reply brief; Any motion for oral argument due by 9/24/2021   (Goell, Geoffrey) (Entered 04/12/2021) |

| 06/01/2021 | 24 | Consent Motion for extension of time until 6/18/2021 to file brief . Responses due by 6/22/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 06/01/2021) |
|---|---|---|
| 06/01/2021 | 25 | Order entered on 6/1/2021 granting Motion for extension of time to file brief & amend scheduling order. Plaintiffs shall file their motion for judgment on the agency record and supporting brief on or before June 18, 2021. Defendant and Defendant-Intervenor shall file their response briefs on or before August 27, 2021. Plaintiffs shall file their reply brief on or before September 24, 2021. Plaintiffs will file a joint appendix on or before October 8, 2021. Motions for oral argument, if any, shall be filed on or before October 8, 2021. (Related Doc # 24 ). (Goell, Geoffrey) (Entered: 06/01/2021) |
| 06/18/2021 | 26 | Confidential Motion for judgment on agency record 56.2 *and Memorandum in Support of Motion*. Response to 56.2 Motion due by 8/27/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) Modified on 6/18/2021 (Goell, Geoffrey). (Entered: 06/18/2021) |
| 06/18/2021 | 27 | Public Motion for judgment on agency record 56.2 *and Memorandum in Support of Motion*. Response to 56.2 Motion due by 8/27/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) Modified on 6/18/2021 (Goell, Geoffrey). (Entered: 06/18/2021) |
| 08/24/2021 | 28 | Consent Motion for extension of time until 9/2/2021 to file response brief (related document(s) 25 ). Responses due by 9/14/2021. Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States.(Westercamp, Kara) (Entered: 08/24/2021) |
| 08/25/2021 | 29 | Order entered on 8/25/2021 granting Motion for extension of time to file response brief. ORDERED that defendant and defendant-intervenor shall file their Rule 56.2 response briefs in this matter on or before September 2, 2021; ORDERED that plaintiffs shall file their Rule 56.2 reply briefs in this matter on or before September 30, 2021; ORDERED that plaintiffs shall file the joint appendix on or before October 14, 2021, and it is further ORDERED that any motion for oral argument shall be filed on or before October 14,2021. (Related Doc # 28 ). (Cheevers, Casey) (Entered: 08/25/2021) |
| 09/02/2021 | 30 | Public Response *in opposition* to motion *for judgment on the agency record* (related document(s) 26 , 27 ). Reply due by 9/30/2021. Filed by Zachary J. Walker of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee.(Walker, Zachary) (Entered: 09/02/2021) |
| 09/02/2021 | 31 | Public Response *in opposition* to motion *for judgment on the administrative record* (related document(s) 27 ). Reply due by 9/30/2021. Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States.(Westercamp, Kara) (Entered: 09/02/2021) |
| 09/27/2021 | 32 | Consent Motion for extension of time until 10/5/2021 to file reply brief . Responses due by 10/18/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 09/27/2021) |
| 09/27/2021 | 33 | Order entered on 9/27/2021 granting Consent Motion for extension of time to file reply brief and amend scheduling order. Plaintiffs shall file their reply brief on or before October 5, 2021. Plaintiffs will file a joint appendix on or before October 19, 2021. Motions for oral argument, if any, shall be filed on or before October 19, 2021 (Related Doc # 32 ). (Goell, Geoffrey) (Entered: 09/27/2021) |
| 10/05/2021 | 34 | Reply *of Plaintiffs* (related document(s) 30 , 31 ). Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 10/05/2021) |

**Appx0050**

| | | |
|---|---|---|
| 10/18/2021 | 35 | Consent Motion for extension of time until 10/26/2021 to *file Joint Appendix*. Responses due by 11/8/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 10/18/2021) |
| 10/18/2021 | 36 | Unopposed Motion for oral argument on Rule 56.2 Motion for Judgment on the Agency Record . Responses due by 11/8/2021. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs.(Gosselink, Robert) (Entered: 10/18/2021) |
| 10/18/2021 | 37 | Order entered on 10/18/2021 granting Consent Motion for extension of time to file the Joint Appendix. ORDERED that the schedule in Court No. 21-00031 is amended such that Plaintiffs will file a joint appendix on or before October 26, 2021. (Related Doc # 35 ). (Goell, Geoffrey) (Entered: 10/18/2021) |
| 10/26/2021 | 38 | Confidential Joint Appendix *(Volume 1)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 39 | Confidential Joint Appendix *(Volume 2)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 40 | Confidential Joint Appendix *(Volume 3)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 41 | Confidential Joint Appendix *(Volume 4)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 42 | Joint Appendix *(Volume 1)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 43 | Joint Appendix *(Volume 2)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 44 | Joint Appendix *(Volume 3)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 45 | Joint Appendix *(Volume 4)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 46 | Joint Appendix *(Volume 5)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 10/26/2021 | 47 | Joint Appendix *(Volume 6)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 10/26/2021) |
| 11/18/2021 | 48 | Order entered on 11/18/2021 granting Unopposed Motion for oral argument. Ordered that oral argument is scheduled for Tuesday, January 25, 2022 at 11:00 AM. A determination as to whether the argument will be held remotely or in person at the CIT will be made at a later date after consultation with the parties. (Related Doc # 36 ). (Goell, Geoffrey) (Entered: 11/18/2021) |
| 01/06/2022 | 49 | Letter issued by The Honorable Gary S. Katzmann concerning *questions for Oral Argument. SEE LETTER*. (Goell, Geoffrey) (Entered: 01/06/2022) |
| 01/19/2022 | 50 | Response to Court's Request/Order *(Response to Questions for Oral Argument)*. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 01/19/2022) |
| 01/19/2022 | 51 | Response to Court's Request/Order *Response to Questions for Oral Argument*. Filed by Zachary J. Walker of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Walker, Zachary) (Entered: 01/19/2022) |

**Appx0051**

| 01/19/2022 | 52 | Response to Court's Request/Order *Response to Questions for Oral Argument*. Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States. (Westercamp, Kara) (Entered: 01/19/2022) |
|---|---|---|
| 01/19/2022 | 53 | Confidential Response to Court's Request/Order *Response to Questions for Oral Argument*. Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States. (Westercamp, Kara) (Entered: 01/19/2022) |
| 01/25/2022 | 54 | Oral Argument via Webex held on January 25, 2022 at 11:00 AM. *The parties may file a post argument submission ( of not more than 1250 words) by February 1, 2022.* (Goell, Geoffrey) (Entered: 01/25/2022) |
| 02/01/2022 | 55 | Response to Court's Request/Order *following oral argument*. Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States. (Westercamp, Kara) (Entered: 02/01/2022) |
| 02/01/2022 | 56 | Response to Court's Request/Order *following oral argument*. Filed by Zachary J. Walker of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Walker, Zachary) (Entered: 02/01/2022) |
| 02/01/2022 | 57 | Confidential Response to Court's Request/Order . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 02/01/2022) |
| 02/01/2022 | 58 | Public Response to Court's Request/Order . Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 02/01/2022) |
| 04/19/2022 | 59 | Order entered on 4/19/2022, Slip Op. 22-36; The court grants Plaintiffs' motion for judgment upon the agency record and remands for furtheraction. Commerce shall file with this court and provide to the parties its remand results within 90 days of the date of this order; thereafter, the parties shall have 30 days to submit briefs addressing the revised remand determination with the court, and the parties shall have 30 days thereafter to file reply briefs with the court. (related document(s) 43 , 30 , 40 , 45 , 34 , 46 , 31 , 41 , 26 , 39 , 38 , 51 , 27 , 42 , 47 , 44 ) Remand Results due by 7/18/2022. (Goell, Geoffrey) (Entered: 04/19/2022) |
| 07/18/2022 | 60 | First Remand results filed by U.S. Department of Commerce . Comments on Remand due by 8/17/2022. Filed by Spencer Neff of U.S. Department of Commerce on behalf of United States. (Attachments: # 1 Remand Results)(Neff, Spencer) Modified on 7/18/2022 (Goell, Geoffrey). (Entered: 07/18/2022) |
| 07/25/2022 | 61 | Form 11 Notice of Appearance . Filed by Christopher Alan Kimura of U.S. Department of Commerce on behalf of United States.(Kimura, Christopher) (Entered: 07/25/2022) |
| 07/25/2022 | 62 | Administrative Record Index for U.S. Department of Commerce filed . Filed by Christopher Alan Kimura of U.S. Department of Commerce on behalf of United States. (Attachments: # 1 Declaration, # 2 Public Remand Record, # 3 BPI Remand Record) (Kimura, Christopher) (Entered: 07/25/2022) |
| 08/17/2022 | 63 | Comments on remand results (related document(s) 60 ). Reply Comments on Remand due by 9/16/2022. Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Rickard, Nathaniel) Modified on 8/17/2022 (Goell, Geoffrey). (Entered: 08/17/2022) |
| 08/17/2022 | 64 | Comments on remand results . Reply Comments on Remand due by 9/16/2022. Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) Modified on 8/17/2022 (Goell, Geoffrey). (Entered: 08/17/2022) |
| 09/16/2022 | 65 | Reply to comments on remand results (related document(s) 63 , 60 , 64 ). Filed by Kara Marie Westercamp of U.S. Department of Justice on behalf of United States. (Westercamp, |

| | | Kara) (Entered 09/16/2022) |
|---|---|---|
| 09/16/2022 | [66](#) | Reply to comments on remand results (related document(s) [63](#) ). Filed by Robert George Gosselink of Trade Pacific PLLC on behalf of All Plaintiffs. (Gosselink, Robert) (Entered: 09/16/2022) |
| 09/30/2022 | [67](#) | Joint Appendix *to Comments on Remand Redetermination* (related document(s) [66](#) , [63](#) , [65](#) , [64](#) )  Filed by Nathaniel Jude Maandig Rickard of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee. (Rickard, Nathaniel) (Entered: 09/30/2022) |
| 12/06/2022 | [68](#) | Order entered on 12/6/2022, Slip Op. 22-136; The court sustains Commerce's Remand Redetermination (related document(s) [66](#) , [63](#) , [65](#) , [60](#) , [64](#) , [62](#) , [67](#) ). (Goell, Geoffrey) (Entered: 12/06/2022) |
| 12/06/2022 | [69](#) | Order entered on 12/6/2022; Judgment issued (related document(s) [68](#) ). (Goell, Geoffrey) (Entered 12/06/2022) |
| 02/01/2023 | [70](#) | Notice of Appeal of judgment of 12/06/2022 filed. (related document(s) [69](#) ). Filed by Zachary J. Walker of Picard, Kentz & Rowe, LLP on behalf of Ad Hoc Shrimp Trade Action Committee.(Walker, Zachary) (Entered: 02/01/2023) |
| 02/07/2023 | [71](#) | Appeal of *Slip Op. 22-136 & Judgment* docketed on 2/7/2023 by the CAFC as appeal no. 2023 1469 (related document(s) [70](#) )  (Goell, Geoffrey) (Entered 02/07/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/03/2023 08:56:37 | | |
| **PACER Login** | zjwalker | **Client Code** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00031-GSK |
| **Billable Pages** | 14 | **Cost** | 1 40 |

FORM 19. Certificate of Compliance with Type-Volume Limitations                    Form 19
                                                                                    July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1469

**Short Case Caption:** Z.A. Sea Foods Private Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes 6,849 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: April 10, 2023

Signature: *Zack Walk*

Name: Zachary J. Walker