2023-1469

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**Z.A. SEA FOODS PRIVATE LTD., B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LTD., MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LTD., SHIMPO EXPORTS, FIVE STAR MARINE EXPORTS PRIVATE LIMITED, HN INDIGOS PRIVATE LTD., RSA MARINES, ZEAL AQUA LTD.,**
*Plaintiff-Appellees,*

v.

**UNITED STATES,**
*Defendant*

**AD HOC SHRIMP TRADE ACTION COMMITTEE,**
*Defendant-Appellant.*

---

Appeal from the United States Court of International Trade in
Case No. 21-00031, Judge Gary S. Katzmann

---

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLEES
Z.A. SEA FOODS PRIVATE LTD., B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LTD., MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LTD., SHIMPO EXPORTS, FIVE STAR MARINE EXPORTS PRIVATE LIMITED, HN INDIGOS PRIVATE LTD., RSA MARINES, ZEAL AQUA LTD.**

---

Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  June 5, 2023          Counsel to Plaintiff-Appellees

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF INTEREST

**Case Number:**          2023-1469

**Short Case Caption:**   Z.A. Sea Foods Private Ltd. v. United States

**Filing Party/Entity:**  Z.A. Sea Foods Private Ltd., B-One Business House Pvt.
                          Ltd., Hari Marine Private Ltd., Magnum Export, Megaa
                          Moda Pvt. Ltd., Milsha Agro Exports Private Ltd., Sea
                          Foods Private Ltd., Shimpo Exports, Five Star Marine
                          Exports Private Limited, HN Indigos Private Ltd., RSA
                          Marines, Zeal Aqua Ltd. (Plaintiff-Appellees)

I certify the following information and any attached sheets are accurate and
complete to the best of my knowledge.

June 5, 2023                  /s/ Robert G. Gosselink
Date                          Electronic Signature of Counsel

                              Robert G. Gosselink
                              Printed Name of Counsel

Counsel for Plaintiff-Appellee, Z.A. Sea Foods Private Ltd., certifies the
following:

1.  Represented Entities.  Provide the full names of all entities represented by
    undersigned counsel in this case:

Z.A. Sea Foods Private Ltd., B-One Business House Pvt. Ltd., Hari Marine Private
Ltd., Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Ltd.,
Sea Foods Private Ltd., Shimpo Exports, Five Star Marine Exports Private
Limited, HN Indigos Private Ltd., RSA Marines, Zeal Aqua Ltd.

2.  Real Party in Interest.  Provide the full names of all reason parties in interest
    for the entities.  Do not list the real parties if they are the same as the entities.

Not applicable.

3.  <u>Parent Corporations and Stockholders</u>.  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Not applicable.

4.  <u>Legal Representatives</u>.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

Robert G. Gosselink of Trade Pacific PLLC
Aqmar Rahman of Trade Pacific PLLC

5.  <u>Related Cases</u>.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.

Not applicable.

6.  <u>Organizational Victims and Bankruptcy Cases</u>.  Provide any information required under Fed. R. App. P 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

# **TABLE OF CONTENTS**

CONTENTS ................................................................................................................. i

AUTHORITIES ...................................................................................................... iii

STATEMENT OF RELATED CASES .................................................................. vi

STATEMENT OF THE ISSUES ............................................................................ 2

STATEMENT OF THE CASE ............................................................................... 2

STATEMENT OF THE FACTS ............................................................................. 4

    A.   The Administrative Review at Commerce ................................................ 4

    B.   The CIT's Remand Order ........................................................................ 15

    C.   Commerce's Remand Redetermination .................................................. 18

    D.   The CIT's Opinion on Remand ............................................................... 19

SUMMARY OF THE ARGUMENT ..................................................................... 20

ARGUMENT .......................................................................................................... 22

    A.   Standard of Review ................................................................................. 22

    B.   Legal Standards Regarding the Determination of Normal Value ........... 23

    C.   Commerce's Initial decision That ZA Sea Foods' Vietnam Sales Were
        Unrepresentative Was Unsupported by Substantial Evidence ................ 26

        1.   The Evasion Scheme Evidence ........................................................ 27

        2.   The Trade Pattern Evidence ............................................................. 31

D.  ZA Sea Foods Sales to Vietnam Were Representative ............................34

E.  Defendant-Appellant Failed to Argue Adequately That ZA Sea Foods' Sales to Vietnam Were Not Consumed in Vietnam.................................38

CONCLUSION ....................................................................44

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)5 AND FED. CIR. R. 32(b)(1)

## <u>TABLE OF AUTHORITIES</u>

### **Cases**

Alloy Piping Products v. United States,
 201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002).…..…………………….…………24, 25

Baley v. United States,
 942 F.3d 1312 (Fed. Cir. 2019)……………………..…………………….38

Coalition of Am. Flange Producers v. United States,
 517 F. Supp. 3d 1378 (Ct. Int'l Trade 2021)…………...…………………….41

CS Wind Vietnam Co. v. United States,
 832 F.3d 1367 (Fed. Cir. 2016)……………………………………..……….22

Dorbest v. United States,
 462 F. Supp. 2d 1262 (Ct. Int'l Trade 2006)…………...…………………….23

Husteel Co. Ltd. v. United States,
 463 F. Supp. 3d 1334 (Ct. Int'l Trade 2020)………………...………………24

Husteel Co., Ltd. v. United States,
 471 F. Supp. 3d 1349 (Ct. Int'l Trade 2020)….………………..…………24

Husteel Co. Ltd. v. United States,
 520 F. Supp. 3d 1296 (Ct. Int'l Trade 2021)..………………..…………….26, 27

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,
 463 U.S. 29 1983)……………………………………………………..23, 41

Nippon Steel Corp v. United States,
 458 F.3d 1345 (Fed. Cir. 2006)…………………………………………...22

Nan Ya Plastics Corp. v. United States,
 810 F.3d 1333 (Fed. Cir. 2016)……………………………………...38

Sigma Corporation v. United States,
 117 F.3d 1401 (Fed. Cir. 1997)……………………………………...35

Suramerica de Aleaciones Laminadas, C.A. v. United States,
    44 F.3d 978 (Fed. Cir. 1994)……………………………………………...22

Ta Chen Stainless Steel Pipe, Inc. v. United States,
    298 F.3d 1330 (Fed. Cir. 2002)…………………………………………...22

United States v. Great American Insurance Co. of New York,
    738 F.3d 1320 (Fed. Cir. 2013)…………………………………………...39

Universal Camera Corp v. NLRB,
    340 U.S. 474 (1951)……………………………………………………37

Zenith Electronics Corp. v. United States,
    988 F.2d 1573 (Fed. Cir. 1993)…………………………………………...35

Z.A. Sea Foods Private Ltd. v. United States,
    569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022)………………………………...*passim*

Z.A. Sea Foods Private Ltd. v. United States,
    606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022)……………………………*passim*

**Statutes**

19 U.S.C. § 1504……………………………………………………………43

19 U.S.C. § 1516a……………………………………………………14, 22, 43

19 U.S.C. § 1671b……………………………………………………..23, 43

19 U.S.C. § 1677b……………………………………………………*passim*

**Regulations**

19 C.F.R. § 351.404……………………………………………..*passim*

**Administrative Determinations**

Antidumping Duties, Countervailing Duties; Final Rule, 62 Fed. Reg. 27,296,
    (Dep't Commerce May 19, 1997)…............ ………………………….24, 27

iv

Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping
    Duty Administrative Review and Final Determination of No Shipments; 2018–
    2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020)...………………3

Certain Frozen Warmwater Shrimp from India: Rescission of Antidumping Duty
    Administrative Review; 2018-2019, In Part, 84 Fed. Reg. 62506 (Dep't
    Commerce Nov. 15, 2019).. ……………………………………………..4, 5

Certain Frozen Warmwater Shrimp From India, 85 Fed. Reg. 13,131 (Dep't
    Commerce Mar. 6, 2020) …………………………………………………..11, 12

Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon
    Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and
    Certain Cut-to-Length Carbon Steel Plate From Korea, 58 Fed. Reg. 37,176,
    (Dep't Commerce July 9, 1993) .......... …………………………………..33

Final Determination of Sales at less Than Fair Value: Dynamic Random Access
    Memory Semiconductors of One Megabit and Above From the Republic of
    Korea, 58 Fed. Reg. 15,467 (Dep't Commerce March 23, 1993) ..............………34

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84
    Fed. Reg. 18,777 (Dep't Commerce May 2, 2019) ……………………..……...30

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Plaintiff-Appellees advise that there has been no other appeal of the underlying court proceeding before this or any other appellate court.  Plaintiff-Appellees also currently are not litigating any other case that would be affected by this Court's decision in the pending appeal.

**2023-1469**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**Z.A. SEA FOODS PRIVATE LTD., B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LTD., MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LTD., SHIMPO EXPORTS, FIVE STAR MARINE EXPORTS PRIVATE LIMITED, HN INDIGOS PRIVATE LTD., RSA MARINES, ZEAL AQUA LTD.,**
*Plaintiff-Appellees,*

v.

**UNITED STATES,**
*Defendant*

**AD HOC SHRIMP TRADE ACTION COMMITTEE,**
*Defendant-Appellant.*

---

**Appeal from the United States Court of International Trade in Case No. 21-00031, Judge Gary S. Katzmann**

---

**RESPONSE BRIEF OF PLAINTIFF-APPELLEES
Z.A. SEA FOODS PRIVATE LTD. ET AL.**

---

This is the response brief of Plaintiff-Appellees, Z.A. Sea Food Private Ltd. ("ZA Sea Foods"), B-One Business House Pvt. Ltd., Hari Marine Private Ltd., Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Ltd., Sea Foods Private Ltd., Shimpo Exports, Five Star Marine Exports Private Limited, HN Indigos Private Ltd., RSA Marines, Zeal Aqua Ltd., regarding the antidumping duty review of certain frozen warmwater shrimp from India. Plaintiff-Appellees

support the U.S. Court of International Trade's ("CIT") judgment that substantial evidence did not support the U.S. Department of Commerce's ("Commerce") rejection of third country sales and reliance on constructed value in calculating a dumping margin for certain frozen warmwater shrimp from India.

## STATEMENT OF THE ISSUES

The issues in this appeal include: (1) whether Commerce unreasonably based normal value for ZA Sea Foods on constructed value instead of ZA Sea Foods' sales to Vietnam when no evidence indicated that ZA Sea Foods' sales to Vietnam were part of a Vietnamese transshipment scheme and when record evidence did not demonstrate that ZA Sea Foods' sales to Vietnam were not consumed in Vietnam or were unrepresentative of sales in the ordinary course of trade; and (2) whether Defendant-Appellant waived its arguments regarding the interpretation of "for consumption" in 19 U.S.C. § 1677b(a)(1)(B)(ii) when challenging Commerce's remand determination by providing only assertions and inadequate argument.

## STATEMENT OF THE CASE

This appeal concerns the final results issued by Commerce in the 14th administrative review of the anti-dumping duty order on certain frozen warmwater shrimp from India. <u>See Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of</u>

No Shipments; 2018–2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020),

("Final Results") and Issues and Decision Memorandum for the Final Results of

the 2018–2019 Antidumping Duty Administrative Review of Certain Frozen

Warmwater Shrimp from India (Dep't Commerce Dec. 21, 2020) ("IDM").  In the

review, Commerce selected ZA Sea Foods as a mandatory respondent.  See id.  ZA

Sea Foods was a cooperative respondent throughout the review, and provided

Commerce complete data regarding its period of review sales of frozen shrimp to

the United States, as well as its sales of frozen shrimp to Vietnam for purposes of

determining normal values.  In the Final Results, Commerce disregarded ZA Sea

Food's Vietnamese sales data, and calculated normal values using constructed

value.  ZA Sea Foods sought judicial review of the Final Results, and in April

2022, the CIT determined that Commerce had failed to support with substantial

evidence its rejection of ZA Sea Foods' Vietnamese sales data as unrepresentative

and unsuitable for comparison purposes.  Z.A. Sea Foods Private Ltd. v. United

States, 569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) ("ZASF I").  On remand,

Commerce relied on ZA Sea Food's third-country sales to Vietnam to calculate

normal values, and revised ZA Sea Foods' antidumping duty rate.  Final Results of

Redetermination Pursuant to Court Remand, dated July 18, 2022.  Thereafter, the

CIT sustained Commerce's redetermination.  See Z.A. Sea Foods Private Ltd. v.

United States, 606 F. Supp. 3d 1335 (Ct. Int'l Trade 2022) ("ZASF II").

3

## STATEMENT OF THE FACTS

### A.    The Administrative Review at Commerce

On May 2, 2019, Commerce initiated the 14th administrative review of the AD order on frozen warmwater shrimp from India covering the period of review ("POR") February 1, 2018, through January 31, 2019.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 18777 (Dep't Commerce May 2, 2019).  Appx0349.  The review covered numerous producers and exporters of subject merchandise, including all Plaintiff-Appellees.

In June 2019, Commerce determined that it was not practicable to examine all the Indian exporters of subject merchandise for which a review had been requested.  As a result, Commerce limited its examination to the two exporters accounting for the largest volume of shrimp exported from India to the United States during the POR: Devi Fisheries Limited (including Satya Seafoods Private Limited, Usha Seafoods and Devi Aquatech Private Ltd.) ("Devi") and Falcon Marine Exports Limited (including K.R. Enterprises) ("Falcon").  See "Selection of Respondents for Individual Review" (June 25, 2019), Appx0369.

In July 2019, the requests for administrative review of Devi and Falcon and 69 other companies were withdrawn, and Commerce rescinded its review of these companies.  See Certain Frozen Warmwater Shrimp from India: Rescission of Antidumping Duty Administrative Review; 2018-2019, in Part, 84 Fed. Reg.

62506 (Dep't Commerce Nov. 15, 2019).  Thereafter, Commerce selected two new

respondents to examine: Plaintiff-Appellee Z.A. Sea Foods Private Limited ("ZA

Sea Foods") and Razban Seafoods Ltd. ("Razban").  See "Selection of New

Respondents for Individual Review" (August 8, 2019), Appx0376.  Razban

subsequently reported that it had no shipments of subject merchandise to the

United States during the period of review, leaving ZA Sea Foods as the sole

mandatory respondent.

In September 2019, ZA Sea Foods responded to Section A of Commerce's

AD questionnaire, indicating that its POR home market sales were less than five

percent by volume of its U.S. sales, and that its home market was not viable for

determining normal values.  ZA Sea Foods Section A Response (Sept. 16, 2019), at

A-4, Exhibit A-1 (a), Appx0642, Appx0669.  ZA Sea Foods reported that Vietnam

was its largest third-country market, that the Vietnam market was viable, and that

its sales volume to Vietnam during the POR even exceeded its sales volume to the

United States.  Id.  Furthermore, ZA Sea Foods reported that its sales to Vietnam

were representative of its sales to the United States: that is, 100% of the shrimp

products that ZA Sea Foods sold to both the United States and Vietnam were

uncooked, headless, shell-on, non-deveined, tail-on products sold in block form,

and 96% of the shrimp products sold to the United States and 93% of the shrimp

products sold to Vietnam were the same white vannamei shrimp species.  Id.  ZA

Sea Foods also reported that it had a "*single* channel of distribution" in both Vietnam and the United States, that the sales processes within this channel were *identical* for both markets, that *all* sales to Vietnam and the United States were made by the same sales staff, that *most* sales to both markets were made on a "manufactured-to-order" basis, that *all* sales were made to unrelated customers, and that ZA Sea Foods's selling activities were *the same* for sales to both Vietnam and the United States. Id. at A-12 to A-18, Appx0650-0656. ZA Sea Foods reported further that it negotiated the price and quantity of *all sales to all markets* "on a sale-specific basis"; that it had "no control over or information regarding the re-sale of the goods by customers"; and that it identified the market for the goods sold "by reference to the commercial invoice, bill of lading, and shipping documents." Id. at A-18 to A-19, Appx0656-0657. Importantly, ZA Sea Foods expressly stated that it was "not aware of any instance where its merchandise sold to a third country was resold or shipped to the U.S." Id. at A-27, Appx0665.

On September 26, 2019, Defendant-Appellant, Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), commented on what third-country comparison market Commerce should use in the review, and requested that Commerce seek more information from ZA Sea Foods regarding the basis for its representations above. See AHSTAC Comments on ZA Sea Foods Section A Response (Sept. 26, 2019), at 2, Appx0557. In its comments, AHSTAC alleged that a substantial volume of

6

ZA Sea Foods' shipments of shrimp to Vietnam were to Vietnamese companies that "have been subject to and, in most cases, actively participated in the Department's proceedings regarding the antidumping duty order on certain frozen warmwater shrimp from the Socialist Republic of Vietnam." Id. at 3, Appx0558. AHSTAC identified one of ZA Sea Foods's Vietnam customers, in particular, as the Minh Phu Group, which it indicated as having "a significant competitive advantage over other Vietnamese shrimp exporters in the U.S. marketplace as the result of its exclusion from the antidumping duty order on certain frozen warmwater shrimp from the Socialist Republic of Vietnam." AHSTAC argued that ZA Sea Foods should explain "why it would be reasonable to conclude that {ZA Sea Foods' Vietnam customers} are consuming the merchandise in Vietnam" and that Commerce should "require ZA Sea Foods to provide a more fulsome and comprehensive justification for the claim that it is not aware of any instance where its merchandise sold to a third country was resold or shipped to the U.S." Id. at 7, Appx0562.

On October 2, 2019, ZA Sea Foods confirmed that Vietnam was the company's largest third-country market and that the shrimp products it sold to Vietnam were more similar to those sold to the United States in terms of product mix and volume than those sold to any other third country. See ZA Sea Foods Supplemental Questionnaire Response for Comparison Market Selection (Oct. 2,

2019), at S-2, S-4, Appx0859, Appx0861.  ZA Sea Foods reported that while the shrimp products that it sold to Vietnam were sometimes smaller than the shrimp products it sold to the United States, and also typically were sold in metric-sized containers versus ounce/pound containers, all the products sold to the United States and Vietnam were uncooked, headless, shell-on, tail-off, vannamei species shrimp products.  Id. at S-4 to S-12, Appx0861-0869.

On October 4, 2019, ZA Sea Foods responded to the remainder of the antidumping questionnaire (i.e., sections B, C, and D, covering comparison market sales to Vietnam, U.S. sales, and costs of production, respectively).  ZA Sea Foods Sections B, C, D Response (Oct. 4, 2019), Appx0870-1451.  And in January 2020, ZA Sea Foods responded to a supplemental sales and cost questionnaire, in which it provided substantial additional information regarding its sales to Vietnam.  ZA Sea Foods Supplemental Sections ABCD Response (Jan. 2, 2020), Appx1452-1757.  Thereafter, Commerce issued ZA Sea Foods a second supplemental questionnaire that reflected many of AHSTAC's questions regarding whether Vietnam was an appropriate comparison market and whether ZA Sea Foods knew what its Vietnam customers did with the shrimp they purchased from ZA Sea Foods.  Commerce's Second Supplemental Questionnaire (Jan. 14, 2020), Appx0630.  In response, ZA Sea Foods fully explained the extent of its knowledge regarding the ultimate destination of the shrimp products that it sold to Vietnam.

ZA Sea Foods Second Supplemental Response (Jan. 29, 2019), Appx1758-1861.

ZA Sea Foods confirmed and supported with documentary evidence that:

- In the normal course of business, ZA Sea Foods received purchase orders from its Vietnam customers that clearly specified Vietnam as the destination of the shipments. <u>Id</u>. at S2-4, Appx1764-1766.

- The bills of lading for the shipments to Vietnam identified the Vietnamese ports of discharge. <u>Id</u>. at S2-4, Appx1764-1766.

- The Indian Government health certificates issued also identified Vietnam as the final destination of the shipments. <u>Id</u>. at S2-4, Appx1764-1766.

- ZA Sea Foods was not aware of any instance in which merchandise sold to a third country, including Vietnam, was resold to the United States. <u>Id</u>. at S2-4, Appx1764-1766.

- ZA Sea Foods sent analytical testing reports, health certificates, survey reports, certificates of export, and certificates of origin to all export customers (or to their customers' banks or to both) *regardless* of export shipment destination. <u>Id</u>. at S2-1 to S2-3, Appx1763-1765.

- Based on the purchase orders, commercial invoices, bills of lading, health certificates, and nature of activity performed by its customers, ZA Sea Foods's understanding was that all the frozen shrimp merchandise that it shipped to Vietnam was consumed in Vietnam. <u>Id</u>. at S2-4, Appx1764-1766.

- The documentation showing payment for the shrimp merchandise sold by ZA Sea Food to Vietnam also identified payment by the Vietnam customers. *See, e.g.*, ZA Sea Food Section A Response (September 16, 2020), Exhibit A-7(b), Appx0741-0769.

- None of the documentation or communications from ZA Sea Foods's customers in Vietnam indicated that ZA Sea Foods' shrimp sales to Vietnam were destined for other markets. <u>Id</u>. at S2-6, Appx1764-1768.

- The shrimp products sold separately by ZA Sea Foods to the United States and Vietnam were comparable in terms of price, customer category, types of products, payment terms, delivery terms.  Id. at S2-6 to S2-7, Appx1768-1769.

- The differences in shrimp sales to the United States and Vietnam related mostly to units of measure (metric units for Vietnam, English units for the United States), delivery times (shorter shipments, shorter time; longer shipments, longer time), and sales terms (shipments to the U.S. market were made under "delivered duty paid" terms of sale).  Id. at S2-6 to S2-7, Appx1768-1769.

- ZA Sea Foods sold to Vietnam customers through commission agents and ZA Sea Foods already had been working with these same commission agents prior to making sales to Vietnam.  Id. at S2-10, Appx1764-1772.

- ZA Sea Foods's customers in Vietnam were processors of shrimp products, and ZA Sea Foods' understanding was that its customers were purchasing frozen shrimp from India for further processing.  Id. at S2-11, Appx1764-1773.

Importantly, ZA Sea Foods also provided Commerce with information establishing that while the U.S. market relied mainly on larger shrimp, ZA Sea Foods sold mostly smaller-sized shrimp to Vietnam, and that – because small shrimp cannot be processed into large shrimp – ZA Sea Foods therefore reasonably understood that the shrimp it sold to Vietnam would not be redirected to the United States.  Id. at S2-7, Appx1768-1769.  Moreover, ZA Sea Foods established that while the U.S. market relied primarily on shrimp containing preservatives, ZA Sea Foods's sales to Vietnam did not contain any preservatives, thus indicating that the shrimp products sold to Vietnam would not be redirected to the United States in the form in which they were sold.  Id. at S2-8, Appx1768-1770.  ZA Sea Foods

further confirmed that while the shrimp sold directly to the United States was packaged in English weight units, the packaging for its Vietnamese shipments usually was in metric units, thus demonstrating that ZA Sea Foods's Vietnam shrimp sales were comparable, but not identical, to normal U.S. packaging requirements.  Id. at S2-9, Appx1768-1770.

On February 27, 2020, Commerce issued its preliminary results of review. See Certain Frozen Warmwater Shrimp From India, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) ("Preliminary Results"), Appx1876, and accompanying unpublished Preliminary Decision Memorandum (Dep't Commerce Feb. 27, 2020), Appx1864.  Because the aggregate volume of ZA Sea Foods's home market sales was insufficient to permit a proper comparison with U.S. sales of the subject merchandise (i.e., the volume of home market sales of the foreign like product was less than five percent of the volume of U.S. sales), Commerce could not use ZA Sea Foods's Indian home market sales to establish normal value.  Preliminary Decision Memorandum, at 9, Appx1872.  Moreover, although ZA Sea Foods had reported complete information for all of its POR sales of frozen shrimp products to Vietnam, Commerce determined that the Vietnam sales were not suitable for establishing normal value, and instead calculated ZA Sea Foods's dumping margin by comparing ZA Sea Foods's U.S. sales to "constructed value" in accordance with section 773(a)(4) of the Act and 19 C.F.R. § 351.404.  Preliminary Decision

11

Memorandum, at 11, Appx1874.  Other than referencing "concerns" regarding the nature of the sales to Vietnam, id. at 11, Appx1874, and alluding to "trade patterns evidenced" by Z.A. Sea Foods' Vietnam customers, id. at 9, Appx1872, Commerce provided no explanation for not relying on ZA Sea Foods's Vietnam sales to establish normal value.  Using constructed value, Commerce calculated a 3.57% antidumping rate for ZA Sea Foods, and assigned the same rate to the 182 other Indian exporters subject to the review, including the other Plaintiff-Appellees in this appeal.  See 85 Fed. Reg. at 13132-13134, Appx1877-1880.

In April 2020, ZA Sea Foods submitted a case brief to Commerce contesting Commerce's Preliminary Results decision to use constructed value instead of ZA Sea Foods's sales to Vietnam to calculate normal value.  See ZA Sea Foods Case Brief (April 10, 2020), Appx1883.  AHSTAC and the American Shrimp Processors Association ("ASPA") submitted rebuttal briefs.  See AHSTAC Rebuttal Brief (April 17, 2020), Appx1931; ASPA Case Brief (April 17, 2020), Appx1911.  Fully six months after briefing concluded, Commerce placed on the record of the review a U.S. Customs and Border Protection ("CBP") determination in an Enforcement and Protection Act ("EAPA") investigation regarding the exportation of Indian-origin shrimp to the United States by the Minh Phu Group.  See Commerce's Memorandum to the File Re. CBP's "Notice of Determination as to Evasion in EAPA Case No. 7356 (Oct. 13, 2020)" (October 27, 2020) ("EAPA

Determination"), Appx1964.  In the investigation, CBP found that the Minh Phu Group: (1) had imported shrimp from multiple Indian suppliers into Vietnam for processing; (2) had stored and processed Indian-origin shrimp in the same facilities and locations where it processed Vietnam-origin shrimp; (3) had processed and comingled Indian-origin shrimp and Vietnam-origin shrimp in its production lines; and (4) did not maintain production records sufficient to trace the processed Indian-origin shrimp through its production processes to its sales.  Id. at 3-10 of Attachment 1, Appx1968-1975.  Although the Minh Phu Group claimed that it had not shipped Indian-origin shrimp to the United States, CBP found that the Minh Phu Group had transshipped Indian-origin shrimp, and had evaded U.S. duties by claiming the shrimp was of Vietnamese origin.  Id. at 3-10 of Attachment 1, Appx1968-1975.  CBP's EAPA decision ultimately was based on facts available with an adverse inference and showed one example of transshipment of Indian-origin shrimp by the Minh Phu Group.  IDM at 16, Appx2009.

The parties, including Plaintiffs Appellees, submitted comments to Commerce on CBP's EAPA determination.  See, e.g., ZA Sea Foods' Comments on CBP EAPA Evasion Determination (November 3, 2020), Appx1976.  None of the information contained in CBP's EAPA Determination indicated that ZA Sea Foods was aware of an evasion scheme by the Minh Phu Group to re-export Indian-origin shrimp from Vietnam to the United States, or that the Minh Phu

13

Group actually re-exported ZA Sea Foods shrimp merchandise to the United

States.  See EAPA Determination, at 1-10, Appx1966-1975.  Nor did any

information in the EAPA Determination suggest that ZA Sea Foods knew or

should have known the ultimate disposition of any shrimp products sold by ZA Sea

Foods to the Minh Phu Group or to any other customer in Vietnam during the

POR.  Id. at 2-3, Appx1967-1968.  The EAPA Determination never referenced ZA

Sea Foods, and indicated only that Minh Phu purchased shrimp for processing

from multiple Indian suppliers.  Id. at 4-5, Appx1969-1970.[1]

---

[1]  On February 11, 2021, CBP's Office of Trade, Regulations and Rulings, after a
*de novo* administrative review, reversed the earlier EAPA Determination of
evasion, holding that there was insufficient evidence that the Minh Phu Group's
entries during the period of investigation contained Indian-origin shrimp.  On
April 26, 2023, the CIT sustained CBP's remand determination of the Minh Phu
Group's non-evasion of antidumping duties.  Ad Hoc Shrimp Trade Action
Committee v. United States, Slip Op. 23-61 (Ct. Int'l Trade April 26, 2023).
Generally, review of a Commerce final determination in an administrative
review is restricted to a review of the administrative record, see 19 U.S.C. §
1516a(b)(2)(A), and "is limited to the information that was presented to or
obtained by the agency making the determination."  Koyo Seiko Co., Ltd. v.
United States, 955 F. Supp. 1532, 1544, n. 9 (Ct. Int'l Trade 1997).  However,
when an action is before a court for decision on a record made before the
agency or on the record made at a trial *de novo,* "indisputable facts ... may be
judicially noticed by the court."  Win-Tex Products, Inc. v. United States, 829
F. Supp. 1349, 1352 (Ct. Int'l Trade 1993); see Borlem S.A. Empreedimentos
Industriais v. United States, 913 F.2d 933 (Fed. Cir. 1990).  While CBP's
reversal of its EAPA Determination occurred after the Final Results, to the
degree the Court deems it relevant, the Court should take judicial notice that
CBP ultimately did not find that the Minh Phu Group was engaged in a
transshipment scheme or that its U.S. entries contained Indian-origin shrimp.

On December 29, 2020, Commerce issued its final results of review, and continued to calculate ZA Sea Foods's dumping margin by comparing ZA Sea Foods's U.S. sales to constructed value.  See Final Results, Appx2020; IDM, Appx1994.  Commerce conceded that "there is no evidence on the record showing that ZA Sea Foods knew of the evasion scheme or knew that {its} sales may ultimately be destined for the United States," IDM at 20, Appx2013 (emphasis added).  Nonetheless, because the Minh Phu Group was a customer of ZA Sea Foods during the POR, Commerce determined that ZA Sea Foods' third-country sales to Vietnam eventually entered the United States and, thus, were inappropriate for use as normal value.  IDM at 20-21, Appx2013-2014.  Commerce modified the AD margin for ZA Sea Foods in other small respects, and assigned ZA Sea Foods and all other Plaintiffs-Appellees a final review-specific dumping margin of 3.06%.  Plaintiff-Appellees' appeal to the CIT ensued.

## B.    The CIT's Remand Order

In its April 2022 opinion, the CIT found that Commerce could not reject ZA Sea Foods' sales to Vietnam as the basis for normal value merely because of allegations that the sales did not represent prices made for consumption in Vietnam because Commerce's reliance on CBP's EAPA determination and Commerce's reliance on trade patterns were not supported by substantial evidence.  Specifically, the CIT concluded that Commerce had "failed to support its rejection of ZA Sea

Foods' Vietnamese sales data and use of constructed value with substantial

evidence," adding that "{n}either Commerce's initial assessment of the record

evidence nor its subsequent analysis of CBP's EAPA determination of evasion by

{the Minh Phu Group} provide a rational basis for its conclusions that {ZA Sea

Foods'} Vietnamese sales were unrepresentative and thus unsuitable as a third

country benchmark." <u>ZASF I</u>, 569 F. Supp. 3d at 1353.

With respect to the EAPA determination, the CIT held that the evidence on

which Commerce relied was deficient in numerous ways.  First, the CIT held that

because ZA Sea Foods was not referenced in CBP's EAPA determination, the

record did not support Commerce's determination that some of ZA Sea Foods'

sales eventually entered the United States.  <i>Id.</i> at 1348-1349.  While the Minh Phu

Group may have sold shrimp to the United States, there was no evidence that ZA

Sea Foods' sales to the Minh Phu Group entered the United States because Minh

Phu Group purchased from multiple Indian suppliers.  The CIT also held that it

was unclear whether the sole instance of transshipment cited in CBP's EAPA

determination occurred during the period of Commerce's review because there was

only a three-month period during which CBP's and Commerce's respective

reviews overlapped.  <u>Id.</u> at 1349.  Further, the Court held that Commerce had

"fail{ed} to acknowledge or address the fact that the EAPA determination was

ultimately predicated on an adverse inference resulting from the Minh Phu Group's

failure to cooperate to the best of its ability with CBP's request for information." Id. Finally, the EAPA determination did not support Commerce's determination that the Minh Phu Group performed no further processing on Indian-origin shrimp that would have taken such shrimp outside the scope of the antidumping order, thus resulting in "consumption" in Vietnam. Id. As such, there was no connection between the facts and Commerce's conclusion that the ZA Sea Foods made sales to the United States through the Minh Phu Group.

With respect to trade patterns, the CIT concluded that Commerce again failed to support its rejection of ZA Sea Foods' Vietnam sales data with substantial evidence. Commerce identified no record evidence establishing that the frozen shrimp sold to Vietnam by ZA Sea Foods "was not resold in Vietnam … or processed into merchandise outside the scope of the antidumping duty order." ZASF I, at 1350-1351. The CIT found that, "{t}he sum total of Commerce's explanation for rejecting the Vietnamese market prices on the basis of {ZA Sea Foods'} customers' trade patterns is that '{ZA Sea Foods} stated that its customers in Vietnam were processors or traders, and {AHSTAC} raised concerns about the nature and the ultimate destination of sales {ZA Sea Foods} made to Vietnam, given that ZA Sea Foods' customers are also known processors and exporters of shrimp to the United States.'" Id. Without "any evidence as to the reasonableness of AHSTAC's concerns, or indeed of the transshipment of subject merchandise

sold to Vietnamese purchasers" by ZA Sea Food during the POR, the CIT

concluded that Commerce's determination of "sufficient cause" to reject the

Vietnamese sales data was unsupported by substantial evidence. <u>ZASF I</u>, 569 F.

Supp. 3d at 1351.

Because neither the EAPA determination nor the trade patterns of ZA Sea

Foods' customers provided an adequate basis for Commerce's conclusion that ZA

Sea Foods' Vietnamese sales were unrepresentative, the CIT determined that

Commerce had failed to articulate a rational basis for its determination, and thus

had not supported its representativeness determination with substantial evidence.

The CIT thereby remanded Commerce's calculation of ZA Sea Foods' normal

value for "further proceedings consistent with this opinion." <u>Id.</u> at 1353.

**C.    <u>Commerce's Remand Redetermination</u>**

In its remand redetermination, Commerce found that the record lacked

sufficient evidence to support a finding that ZA Sea Foods' third-country sales to

Vietnam were "unrepresentative and unsuitable for use in the calculation of

{normal value}." <u>See</u> <u>Final Results of Redetermination Pursuant to Court Remand</u>

(July 18, 2022) ("<u>Remand Redetermination</u>"), at 1, Appx0255. Commerce

explained that "third country sales are presumptively representative where

aggregate sales quantities are at a sufficient level, and the party seeking to show

that third-country sales are not representative bears the burden of making such a

showing." Id. at 16, Appx0270.  Commerce acknowledged Defendant-Appellant's

argument that ZA Sea Food "sold shrimp to certain Vietnamese customers that

were exporters or resellers," but explained that "{a}bsent affirmative evidence that

the shrimp was not consumed in Vietnam, or that the sales were otherwise not

representative, {Commerce} do{es} not have substantial evidence to support a

finding that these sales may not be used to calculate normal value." Id. at 16-17,

Appx0270-0271. Commerce found that there was no evidence on the record to

support Defendant-Appellant assertion that ZA Sea Foods' sales were not for

consumption in Vietnam.  That ZA Sea Foods' customers may have been

processors or traders was, according to Commerce, "insufficient to demonstrate

that such sales were not consumed in Vietnam and thus are not representative." Id.

at 17, Appx-0271.  Moreover, Commerce determined that AHSTAC had failed to

point to "any additional record evidence" that would allow Commerce to overcome

this conclusion. Id.  Commerce thus recalculated ZA Sea Foods' estimated

weighted-average dumping margin by using its third-country sales to Vietnam as

normal value, resulting in a revised weighted-average dumping margin of 1.73

percent. Id. at 18, Appx0272.

**D.    The CIT's Opinion on Remand and Judgment**

In ZASF II, the CIT sustained Commerce's remand redetermination that the

record contained insufficient evidence that ZA Sea Foods' sales to Vietnam were

unrepresentative and unsuitable for use in the dumping calculation.   In addition,

the CIT found that AHSTAC had waived its argument regarding the interpretation

"for consumption" because AHSTAC did not provide adequate argument.  ZASF

II, 606 F. Supp. 3d at 1343-44.  The court reasoned that AHSTAC did not discuss

the relevant case law or Commerce's practice interpreting the phrase "for

consumption" in the context of third country determinations and Commerce's

ability to make presumptions in market viability analysis.  Nor did AHSTAC offer

any statutory analysis, textual meaning, or legislative history relevant to its

position.  In essence, the CIT concluded that AHSTAC's "argument and briefing

consist of no more than repeated assertions that the statute should be interpreted

and applied in a certain way, without identifying the relevant authorities supporting

those bare assertions."  Id.  Therefore, the CIT sustained Commerce's remand

determination and deemed waived AHSTAC's separate argument regarding

Commerce's purported obligation to make a separate finding on the issue of

consumption.

## SUMMARY OF THE ARGUMENT

Commerce's original determination — rejecting of ZA Sea Foods' third-

country sales to Vietnam and relying on constructed value in calculating a

dumping margin for certain frozen warmwater shrimp from India — was not

supported by substantial evidence and not in accordance with law.  According to

20

19 U.S.C. § 1677b(a)(1)(B)(ii)(I), third-country sales prices must be "representative." Nevertheless, it is well-established that "where the aggregate quantity of third country sales are at a sufficient level, those sales are presumptively representative unless demonstrated otherwise. … A party seeking to establish that sales are not representative bears the burden of making such a showing. … {and} any determination that the proposed third country sales are not representative must be supported by substantial evidence on the record." ZASF I, 569 F. Supp. 3d at 1343 (citations omitted). In this case, Commerce's decision to reject ZA Sea Foods' Vietnamese third-country sales data was not adequately supported by record evidence.

At the CIT, Defendant-Appellant did not provide adequate argument as to the correct interpretation of the "for consumption" language of 19 U.S.C. §1677b(a)(1)(B)(ii) for purposes of determining normal value. Defendant-Appellant identified no new evidence, and provided only an undeveloped analysis of the underlying question of statutory interpretation with mere assertions that the statute should be interpreted and applied in a particular way; and therefore waived its argument. If the Court decides that the claim was not waived for lack of adequate argument, Commerce's remand redetermination nonetheless should be sustained because no evidence on the record supports Defendant-Appellant's assertion that ZA Sea Foods' sales were not for consumption in Vietnam.

# ARGUMENT

## A.    Standard of Review

This Court is required to hold unlawful Commerce's determinations in antidumping duty proceedings if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(l)(B)(i). In reviewing for substantial evidence, the Court must search for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of evidence must account for anything in the record that reasonably detracts from its weight. CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)). This includes "contradictory evidence or evidence from which conflicting inferences could be drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

These standards require the Court to view the record as a whole, and "can be translated roughly to mean 'is {the determination} unreasonable?'" Nippon Steel Corp v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted). To affirm Commerce's determination, the agency must have provided "a reasoned

explanation ... that is supported by the administrative record." <u>Dorbest v. United States</u>, 30 C.I.T. 1671, 1677-78, 462 F. Supp. 2d 1262, 1269-70 (Ct. Int'l Trade 2006) (<u>citing</u> <u>Goldlink Indus. Co. v. United States</u>, 30 C.I.T. 616, 629, 431 F. Supp. 2d 1323, 1334 (2006)).  That is, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.</u>, 463 U.S. 29, 43 (1983) (citing <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)).

## B.    Legal Standards Regarding the Determination of Normal Value

Commerce typically finds normal value to be the price at which the subject merchandise is sold in the exporting country.  19 U.S.C. § 1677b(a)(1)(B)(i). Where home market prices are unavailable, Commerce may use the price at which the merchandise is sold for consumption in a third country (<u>i.e.</u>, not the exporting country or the United States).  <u>Id.</u> §1677b(a)(1)(C).  However, Commerce may use third-country prices only where such prices are representative, where the quantity of sales is sufficiently high, and where Commerce does not determine that a particular market situation prevents a proper comparison between the export price and the third country price.  <u>Id.</u> § 1677b(a)(1)(B)(ii); 19 C.F.R. § 351.404(c)(2)(ii).

The statute does not define what it means for prices to be representative, but judicial authority establishes that "Commerce's regulations and regulatory history

reveal that where the aggregate quantity of third country sales are at a sufficient level, those sales are *presumptively representative* unless proven otherwise." Husteel Co., Ltd. v. United States, 471 F. Supp. 3d 1349, 1360 (Ct. Int'l Trade 2020) (emphasis added), *citing* 19 C.F.R. § 351.404(b)-(c) (Commerce shall consider a third country viable if the aggregate quantity of sales are at a sufficient level); Antidumping Duties, Countervailing Duties; Final Rule, 62 Fed. Reg. 27,296, 27,357 (Dep't Commerce May 19, 1997) ("Preamble") (the party seeking to show that sales to a third country are not representative bears the burden of making such a showing); see also Alloy Piping Products v. United States, 201 F. Supp. 2d 1267, 1276-77 & n.7 (Ct. Int'l Trade 2002) ("Alloy Piping"). Commerce's determination that sales into a third country comparator market are not representative must be supported by substantial evidence.  See Husteel Co. Ltd. v. United States, 463 F. Supp. 3d 1334, 1360 (Ct. Int'l Trade 2020), citing Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 48-49, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); see also Z.A. Sea Foods et al. v. United States, 569 F. Supp. 3d 1338, 1343 (Ct. Int'l Trade 2022); Remand Redetermination, at 16, Appx0270 ("third country sales are presumptively representative where aggregate sales quantities are at a sufficient level, and the party seeking to show that third country sales are not representative bears the burden of making such a showing").

24

In <u>Alloy Piping v. United States</u>, the CIT explained Commerce's rationale

for focusing on the sufficiency of the sales for the purpose of establishing viability:

> The criteria of a "particular market situation" and the
> "representativeness" of prices fall into the category of issues that the
> Department need not, and should not, routinely consider.... {T}he
> SAA at 821 recognizes that the Department must inform exporters at
> an early stage of a proceeding as to which sales they must report.
> This objective would be frustrated if the Department routinely
> analyzed the existence of a "particular market situation" or the
> "representativeness" of third country sales.

201 F.Supp.2d 1267, 1276, <u>citing</u> <u>Preamble</u>, 62 Fed. Reg. at 27,357.  The CIT

found this approach a reasonable application of the statute because the time frame

within which Commerce must conduct its investigations is necessarily very short.

Therefore, it was sensible to establish a bright line rule for determining viability

early in the process.  <u>See</u> <u>id.</u>  As noted above, there was no dispute in this

proceeding that ZA Sea Foods' third-country market, Vietnam, was viable during

the POR.  <u>See</u> ZA Sea Foods' Section A Response (Sept. 16, 2019), Exhibit A-1

(showing that ZA Sea Foods' sales to Vietnam even exceeded its sales to the

United States), Appx0669.[2]  As such, ZA Sea Foods' third-country sales to

---

[2]    Commerce's regulations limit the inquiry of market viability to one criterion:
the sufficiency of sales in the third country.  <u>See</u> 19 C.F.R. § 351.404 -
("Determination of viable market — (1) In general. The Secretary will consider
the exporting country or a third country as constituting a viable market if the
Secretary is satisfied that sales of the foreign-like product in that country are of
sufficient quantity to form the basis of normal value. (2) Sufficient quantity.
'Sufficient quantity' normally means that the aggregate quantity (or, if quantity
is not appropriate, value) of the foreign like product sold by an exporter or

Vietnam were presumptively representative, and the burden was on Commerce to establish that ZA Sea Foods' Vietnamese selling prices were not "representative." For the reasons below, the Court should find that Commerce failed to satisfy its burden in this case.

## C.  Commerce's Initial Decision That ZA Sea Foods' Vietnam Sales Were Unrepresentative Was Unsupported by Substantial Evidence

In its Final Results, Commerce erred by rejecting ZA Sea Foods' Vietnamese third-country sales data because substantial evidence does not support a determination that ZA Sea Foods' Vietnamese sales were unrepresentative. Specifically, neither Commerce's determination that ZA Sea Foods' were part of an evasion scheme as set out in CBP's EAPA determination nor Commerce's reliance on the trade patterns of ZA Sea Foods' Vietnamese customers provides a sufficient basis to conclude that the Vietnamese sales were unrepresentative.

It is well-established that where the aggregate quantity of third country sales are at a sufficient level, those sales are presumptively representative unless demonstrated otherwise.  Husteel Co. v. United States, 520 F. Supp. 3d 1296, 1304 (Ct. Int'l Trade 2021) (citing 19 C.F.R. § 351.404(b)–(c)).  A party seeking to establish that third-country sales are not representative bears the burden of making

---

producer in a country is 5 percent or more of the aggregate quantity (or value) of its sales of the subject merchandise to the United States.").

such a showing, see Antidumping Duties, Countervailing Duties: Final Rule, 62

Fed. Reg. 27,296, 27,357 (Dep't Commerce May 19, 1997), and any determination

that third country sales are not representative must be supported by substantial

evidence on the record. Husteel, 520 F. Supp. 3d at 1305 (citations omitted). In

this case, there is no dispute that the aggregate quantity of ZA Sea Food's third-

country sales to Vietnam during the period examined was at a sufficient level, and

that those sales were presumptively representative. The question, therefore, is

whether substantial evidence on the record sufficiently rebutted that presumption.

The answer is no.

### 1.    The Evasion Scheme Evidence

In the Final Results, Commerce relied primarily on CBP's EAPA

determination of evasion to conclude that ZA Sea Foods' Vietnamese sales were

unrepresentative. Specifically, Commerce stated that:

> Given that CBP found sales made by the Minh Phu Group during the
> POR were ultimately sold in the United States, it would be unreasonable
> to use ZA Sea Foods' Vietnamese sales, which include sales to the Minh
> Phu Group, as the comparison market. **Some of these sales ultimately
> entered the United States** and are an unsuitable comparison for ZA Sea
> Foods' own sales to the United States.

IDM at 19, Appx2012 (emphasis added). In support of this conclusion, Commerce

further noted that "{t}he prices to Vietnam are **not truly prices for consumption**

in Vietnam as **the shrimp is exported for further processing**," that ZA Sea

Foods' sales to Vietnam "were **not consumed in Vietnam**," that they "**eventually**

27

**become U.S. sales**," Id. at 19-20, Appx2012-2013(emphasis added). Defendant-Appellant quotes other Commerce findings, including that ZA Sea Foods's Vietnam sales were "found to be **part of an evasion scheme**" and that "ZA Sea Foods' primary customer in Vietnam engaged in **no further processing** before re-exporting Indian-origin shrimp. AHSTAC Br. at 19, citing IDM at 16, Appx2009 (emphasis added). Based on these conclusions, Commerce found that ZA Sea Foods' Vietnamese sales to the Minh Phu Group were unrepresentative, and that such sales data could not serve as the basis for calculation of normal value. IDM at 16, Appx2009.

The problem is that none of these Commerce conclusions are supported by substantial evidence on the record. Nothing on the administrative record establishes that the frozen shrimp sold to Vietnam by ZA Sea Foods was *not* resold or consumed in Vietnam. Contrary to Commerce's and Defendant-Appellant's claims, there is no record evidence that the shrimp sold to Vietnam by ZA Sea Foods was *not* processed into merchandise outside the scope of the antidumping duty order. Nor is there any record evidence that any of the scope merchandise that the Minh Phu Group might have commingled and entered into the United States was purchased from ZA Sea Foods. Because no evidence demonstrates that ZA Sea Foods' merchandise was re-exported (either as in-scope or non-scope merchandise), it was not reasonable for Commerce to conclude that it was.

28

Defendant-Appellant claims that in reviewing the <u>Final Results</u>, the CIT "reweighed" the record, "reviewed the evidence anew," and "disagreed with Commerce's conclusions."  AHSTAC Br. at 20-22.  But this is not a case where conflicting inferences may be drawn from the record.  Here, it simply was unreasonable for Commerce to have inferred from the evidence in the first place that ZA Sea Foods' Vietnam sales ultimately entered the United States or were part of a transshipment scheme when no record evidence establishes such claims.  The CIT did not "reassess" the record evidence, AHSTAC Br. at 22; rather, it found no support in the record for Commerce's claims.

For example, Commerce's claim that the Indian-origin shrimp that the Minh Phu Group shipped to the United States was "exported without further processing" was contradicted throughout the EAPA determination, and no record evidence supported Commerce's conclusion that "the prices to Vietnam are in fact prices for sales that eventually become U.S. sales" and "do not represent prices of sales made for consumption in Vietnam."  <u>See</u> EAPA Determination (October 27, 2020), Appx1966-1975, ; <u>see also</u> <u>ZASF I</u>, 569 F. Supp 3d at 1348.  Moreover, ZA Sea Foods is not mentioned in the EAPA determination, and there therefore was no basis for Commerce's to conclude that "some of {ZA Sea Foods'} sales ultimately entered the United States."  IDM at 19, Appx2012.

In addition, there was no basis for Commerce's conclusion that "sales made

by the Minh Phu Group during the POR were ultimately sold in the United States." Id. While the initial EAPA determination found that the Minh Phu Group participated in an evasion scheme, that finding corresponded to the period October 8, 2018, through October 13, 2020, and identified only one undated instance of commingled Vietnamese and Indian-origin shrimp. EAPA Determination at 4-7, Appx1969-1972. In contrast, Commerce's review of the antidumping order on frozen warmwater shrimp from India spanned the period from February 1, 2018, through January 31, 2019. Initiation, 84 Fed. Reg. at 18,778. Commerce identified no support for its conclusion that, despite only a three-month overlap with the EAPA investigation, transshipment must have occurred during the administrative review period. Furthermore, Commerce failed to acknowledge that the EAPA determination was predicated on an adverse inference resulting from the Minh Phu Group's failure to cooperate to the best of its ability with CBP's request for information. EAPA Determination at 9, Appx1974. Indeed, CBP relied on the **absence** of evidence (1) that transshipment did **not** occur, and (2) of "how many imports to the United States contained comingled Indian-origin and Vietnamese-origin shrimp." Id. (emphasis added). Commerce thus failed to articulate a reasoned connection between the underlying facts and its conclusion that ZA Sea Foods' shrimp exports were comingled and re-exported to the United States by the Minh Phu Group during the period of review.

Nor did the EAPA determination support Commerce's determination that the Minh Phu Group performed "no such further processing" on Indian-origin shrimp exported to the United States. IDM at 19, Appx2012. While CBP did identify one exported shipment of comingled Indian- and Vietnamese-origin shrimp that was <u>not</u> further processed, there was no basis for Commerce to conclude from this finding that the Minh Phu Group performed "**<u>no</u>**" further processing on its Indian-origin shrimp. EAPA Determination at 7, Appx1972; <u>see</u> <u>generally</u> IDM at 17-19, Appx2010-2012. Indeed, the EAPA determination explicitly states that "{e}vidence on the record shows that Minh Phu has a history of importing Indian-origin shrimp into Vietnam for processing." EAPA Determination at 4, Appx1969 (citation omitted). Given Commerce's failure to address this conflicting information, and to explain how the cited record evidence supports its conclusion with respect to the processing of ZA Sea Foods' shrimp exports, Commerce's findings are not supported by substantial evidence. In sum, CBP's EAPA investigation provided no support for Commerce's determination that ZA Sea Foods' sales to Vietnam were unrepresentative and unsuitable for establishing normal values.

## 2.    The Trade Pattern Evidence

Defendant-Appellant also claims that ZA Sea Foods sales to Vietnam were unrepresentative and could not be used to determine normal value because a

majority of ZA Sea Foods' sales to Vietnam were to customers that were

themselves exporters of frozen shrimp.  AHSTAC Br. at 17, <u>citing</u> IDM at 16,

Appx2009.  But this is neither a logical argument – the latter premise does not

dictate the former conclusion – nor is it substantial evidence.  In this case, ZA Sea

Foods reported that it had no control over the merchandise after its sales to

Vietnam and that it neither knew nor should have known that any frozen shrimp it

sold to its Vietnamese customers would be sold domestically after processing or

re-exported.  ZA Sea Foods Second Supplemental Response (Jan. 29, 2019), S2-1

to S2-11, Appx1763-1773.  Because ZA Sea Foods did not know the ultimate

disposition of the shrimp products at the time of sale, and record information did

not provide any such information, it was unreasonable and irrelevant for

Commerce to base its decision on the representativeness of ZA Sea Foods' sales on

any alleged downstream trade patterns of ZA Sea Foods' customers.  More

importantly, even if the trade patterns *were* relevant, Commerce's conclusions

were not supported by substantial evidence because nothing on the administrative

record establishes that the shrimp products that ZA Sea Foods sold to Vietnam

were <u>not</u> resold in Vietnam or <u>not</u> processed into merchandise outside the scope of

the antidumping duty order.  The sum total of Commerce's explanation for

rejecting the Vietnamese market prices on the basis of ZA Sea Foods' customers'

trade patterns was that its customers were processors and traders, and that

AHSTAC had raised "concerns" about the nature and the ultimate destination of the shrimp shipments. Commerce deemed this information "sufficient" to support its rejection of the Vietnamese sales data. IDM at 15, Appx2008. But without any evidence as to the reasonableness of AHSTAC's concerns, or any actual evidence of transshipment of subject merchandise sold by ZA Sea Foods to its Vietnamese purchasers during the period examined, Commerce's determination of "sufficient cause" to reject the Vietnamese sales data was unsupported by substantial evidence. See ZASF I, 569 F. Supp. 3d at 1350.

AHSTAC also suggests that Commerce reasonably concluded that ZA Sea Foods' sales to Vietnam were not representative because "the shrimp sold by ZA Sea Foods to customers in Vietnam may not have been consumed in that market." AHSTAC Br. at 17 (emphasis added). But such speculation cannot constitute substantial evidence and cannot be the basis for rational decision-making. Moreover, AHSTAC's argument is based on a fundamental misunderstanding of the law. Merchandise sold to a market, even if ultimately destined for export, is "consumed" in the market if it is used to produce non-subject merchandise prior to exportation. *See Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea*, 58 Fed. Reg. 37,176, 37,182 (Dep't Commerce July 9, 1993); *Final Determination of Sales*

*at less Than Fair Value: Dynamic Random Access Memory Semiconductors of One Megabit and Above From the Republic of Korea*, 58 Fed. Reg. 15,467, 15,473 (Dep't Commerce March 23, 1993) ("where a product within the scope of an investigation has been transformed into a product outside that scope before exportation, we consider that product to have been 'consumed' within the country"). Therefore, if ZA Sea Foods' Vietnam customers had processed the purchased shrimp into, for example, breaded shrimp, battered shrimp, prepared meals, canned shrimp, or any other forms of non-subject shrimp merchandise, then the shrimp would have been "consumed" in Vietnam regardless of whether the customers sold the downstream products within Vietnam or exported such merchandise abroad. In this review, no evidence on the administrative record established that ZA Sea Foods' customers did <u>not</u> process the frozen shrimp purchased from ZA Sea Food into merchandise not under consideration. As such, Commerce erred in presuming that ZA Sea Foods' sales "were not consumed in Vietnam," IDM at 20, Appx2013, and Commerce's <u>Final Results</u> conclusion that ZA Sea Foods' Vietnam sales were not representative for purposes of calculating normal values thus was unsupported by substantial evidence.

**D.      <u>ZA Sea Foods' Sales to Vietnam Were Representative</u>**

In certain areas of the antidumping law, the Courts have recognized that Commerce is justified in placing the burden of proof on exporters where they have

the best access to information pertinent to Commerce's decision-making.  See, e.g., Sigma Corporation v. United States, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997) (requiring exporters to demonstrate an absence of central government control in a nonmarket economy); see also Zenith Electronics Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information").  In this case, the question of what ZA Sea Foods' customers did with the shrimp they purchased is not information that ZA Sea Foods' possessed – or was in a position to know.  In any case, as established above, the regulations and judicial authority establish that it is the party seeking to determine that third-country sales are not representative that bears the burden of making such a showing.  Although it was **not** ZA Sea Foods' burden to do so, ZA Sea Foods nonetheless provided affirmative evidence on the record establishing that its sales of frozen shrimp to Vietnam **were** representative and should be used as the basis for normal values, and Commerce's failure to consider such information rendered its initial Final Results decision unsupported by substantial evidence.

While the shrimp products that ZA Sea Foods sold to Vietnam generally were smaller than the shrimp products sold to the United States and mostly were sold in metric-sized containers (i.e., normal for countries that follow the metric system), all the products sold to Vietnam shared the same major physical

characteristics as those sold to the United States: <u>i.e.</u>, they all were uncooked, headless, shell-on, tail-off, vannamei species shrimp products.  <u>See</u> ZA Sea Foods Supplemental Questionnaire Response for Comparison Market Selection (Oct. 2, 2019), at S-4 to S-12, Appx0861-0869.  In this respect, all of ZA Sea Foods' sales to Vietnam were representative of each other and of sales to the United States.  In addition, ZA Sea Foods' sales to Vietnam were made to a number of different customers, and Commerce made no finding that ZA Sea Foods' Vietnam sales were made in non-commercial quantities, at unusual times during the period of review, with particular sales terms, through unique channels, or that they were in any way atypical of ZA Sea Foods' normal sales.  In failing to perform such analyses and to consider such factors, Commerce failed to consider the record evidence establishing that ZA Sea Foods' sales prices to Vietnam *were* representative.  Therefore, even if the downstream trade patterns of ZA Sea Foods' Vietnam customers and the duty evasion scheme of the Minh Phu Group were relevant – and constituted evidence that ZA Sea Foods' sales to Vietnam were not representative, which they do not – Commerce ignored significant other information showing that ZA Sea Foods' sales to Vietnam **were** representative.  <u>See</u> <u>Universal Camera Corp v. NLRB</u>, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight").

In the <u>Final Results</u>, Commerce claimed that "serious issues were discovered during the course of this review with { ZA Sea Foods'} Vietnamese sales," IDM at 21, Appx2014, but Commerce did not identify any of those issues. For example, Commerce did not identify or highlight any problems with the quantities, prices, terms of sale, terms of payment, product mix, and expenses of ZA Sea Foods' sales to Vietnam, nor question any aspect of ZA Sea Foods' reported third-country sales database. Significantly, Commerce in the <u>Final Results</u> made no effort to examine the individual sales prices to Vietnam or to compare the selling prices of shrimp products to Vietnam customers who were processors to the selling prices to customers that were not. Nor did Commerce acknowledge that the shrimp products that ZA Sea Foods sold to Vietnam, among sales to all third countries, were the most similar to those sold to the United States in terms of product mix and sales volumes. <u>See</u> ZA Sea Foods Supplemental Questionnaire Response for Comparison Market Selection (Oct. 2, 2019), at S-2, S-4, Appx0859, Appx0861. Nor did Commerce recognize that ZA Sea Foods had a "single channel of distribution" in both the United States and Vietnam, that the sales processes within this channel were identical for both markets, that all sales to Vietnam and the United States were made by the same sales staff, that most sales to both markets were made on a "manufactured-to-order" basis, that all sales were made to unrelated customers, and that ZA Sea Foods' selling activities were the same for

sales to both Vietnam and the United States.  ZA Sea Foods Section A Response

(Sept. 16, 2019), at A-12 to A-18, Appx0650-0656.

Commerce's failure to discuss at all the "representative" aspects of ZA Sea

Foods' sales to Vietnam rendered Commerce's initial <u>Final Results</u> decision

arbitrary and unsupported by substantial evidence.  By ignoring detracting

evidence and by not citing any of the purported "serious problems" that

undermined the legitimacy of the sales prices to Vietnam that ZA Sea Foods

reported to determine normal value, Commerce reached a decision to calculate ZA

Sea Foods' normal value based on constructed value that was unsupported by

substantial evidence.

## E.    <u>Defendant-Appellant Failed to Argue Adequately That ZA Sea Foods' Sales to Vietnam Were Not Consumed in Vietnam</u>

Following Commerce's <u>Remand Redetermination</u>, the CIT in <u>ZASF II</u>

correctly determined that AHSTAC did not sufficiently argue its new theory of the

relevant statutory framework.  It is well established that if a party does not present

adequate argumentation on the rules of statutory interpretation, "that misstep

warrants a finding of waiver."  <u>Nan Ya Plastics Corp. v. United States</u>, 810 F.3d

1333, 1347 (Fed. Cir. 2016).  Arguments that are not appropriately developed in a

party's briefing and issues that are "adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation," can be deemed

waived.  <u>Baley v. United States</u>, 942 F.3d 1312, 1331 (Fed. Cir. 2019); <u>see also</u>

<u>United States v. Great American Insurance Co. of New York</u>, 738 F.3d 1320, 1328

(Fed. Cir. 2013).  In commenting on Commerce's <u>Remand Redetermination</u>,

AHSTAC argued to the CIT that – notwithstanding whether ZA Sea Foods sales to

Vietnam were "representative" – the record did not show that ZA Sea Foods' sales

to Vietnam were "for consumption" in Vietnam, as contemplated by the statute.

<u>See</u> 19 U.S.C. § 1677b(a)(1)(B)(ii) (when basing normal value on third-country

sales, the price used to establish normal value should be "the price at which the

foreign like product is so sold … *for consumption* in a country other than the

exporting country or the United States") (emphasis added).  But in sustaining the

<u>Remand Redetermination</u>, the CIT held that AHSTAC's argument regarding the

correct interpretation of the "for consumption" language of 19 U.S.C.

§1677b(a)(1)(B)(ii) was insufficiently developed and therefore waived.  <u>ZASF II</u>,

606 F. Supp. 3d at 1344, Appx0013.  The CIT found that AHSTAC had identified

no new evidence, and had provided only an "undeveloped analysis of the

underlying question of statutory interpretation" with "repeated assertions that the

statute should be interpreted and applied in a particular way, without identifying

the relevant authorities supporting those bare assertions.  <u>Id.</u> at 1343, 1344,

Appx0012-0013.  Defendant-Appellant argues that its remand comments "offered

more than" assertions and an undeveloped analysis.  AHSTAC Br. at 28.  But the

CIT was correct to deem Defendant-Appellant's argument waived.

As an initial matter, the distinction raised by AHSTAC between whether ZA Sea Foods' sales were "for consumption" versus "representative" under 19 U.S.C. § 1677b(a)(1)(B)(ii) was irrelevant to Commerce's determination because just as the record evidence did not establish that ZA Sea Foods' Vietnam sales were not "representative," AHSTAC also failed to identify any evidence establishing that ZA Sea Foods' sales to Vietnam were not "for consumption."  See Remand Redetermination, at 16-17, Appx0270-0271 ("AHSTAC has not pointed to any additional record evidence that would allow Commerce to overcome the Court's ruling that the fact that ZA Sea Foods' customers were processors or traders (i.e., resellers) is insufficient to demonstrate that such sales were not consumed in Vietnam").  AHSTAC argued that it had submitted "evidence rebutting any potential presumption that {ZA Sea Foods'} sales to Vietnam were for consumption in the Vietnamese market."  AHSTAC Comments on Remand Redetermination, at 11, Appx0287.  But as Commerce explained in its remand redetermination, aside from the EAPA decision that the CIT held to be unpersuasive, the record lacked any other information to support AHSTAC's claim.  Remand Redetermination, at 17, Appx0271.

Defendant-Appellant argues that it "presented a developed argument" to the CIT, and that "any presumption that ZA Sea Foods' third country sales to Vietnam were 'for consumption' in that market was rebutted."  AHSTAC Br. at 30-31.  But

Defendant-Appellant presented no new evidence and thus failed to rebut that

presumption.  AHSTAC argued to the CIT that because it "presented affirmative

evidence that {ZA Sea Foods'} sales to customers in Vietnam were *unlikely* to

have been for consumption in that country," Commerce was obliged to identify

affirmative evidence that ZA Sea Foods' Vietnam sales in fact were consumed in

Vietnam.  AHSTAC Comments on Remand Redetermination, at 14, Appx0290

(emphasis added).  But AHSTAC falsely equated the *likelihood* of a finding with

the applicable substantial evidence standard, which requires Commerce to draw a

"rational connection between the facts accepted and the determination made."

Coalition of Am. Flange Producers v. United States, 517 F. Supp. 3d 1378, 1381

(Ct. Int'l Trade 2021) (citing Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto.

Ins. Co., 463 U.S. 29, 43 (1983)).  According to AHSTAC itself, the evidence that

it proffered demonstrated only that ZA Sea Foods' sales to Vietnam "were to

customers that were, in turn, exporters of frozen warmwater shrimp products."

AHSTAC Comments on Remand Redetermination, at 13, Appx0288.  Consistent

with the Court's remand order, Commerce determined that this fact alone did not

constitute substantial evidence to find that ZA Sea Foods' sales were not consumed

in Vietnam.  See Remand Redetermination at 16, Appx0270; see also ZASF I, 569

F. Supp. 3d at 1353. Therefore, Commerce's determination that the record lacked

evidence to support a finding that ZA Sea Foods' third-country sale prices could

not be used as normal value was in accordance with law.  AHSTAC presented the CIT with no new evidence justifying a different conclusion, and the burden thus did not shift to ZA Sea Foods to demonstrate that the merchandise it sold to Vietnam was consumed in Vietnam.  See AHSTAC Br. at 29; see also ZASF II, 606 F. Supp. 3d at 1343.  As such, AHSTAC's analysis of the facts was simply a recitation of an earlier allegation that the CIT already had found unsupported.

Defendant-Appellant claims that because both the Government and ZA Sea Foods responded to AHSTAC's argument, Defendant-Appellant must have provided a proper legal analysis.  AHSTAC Br. at 29.  That both parties responded to AHSTAC's position, however, does not mean that AHSTAC's argument was sufficiently developed.  In fact, both the Government and ZA Sea Foods focused their responses almost entirely on how AHSTAC had offered nothing new.  See Defendant's Response to Comments on Remand Redetermination, at 6-8, Appx0302-0304; ZA Sea Foods' Response to Comments on Remand Redetermination, at 5-7, Appx0316-0318.

Last, Defendant-Appellant claims the CIT unreasonably faulted AHSTAC for not arguing what "for consumption in a third country" means when the Government previously had indicated that it was not aware of "any prior Commerce decision" addressing this issue.  AHSTAC Br. at 31.  But Defendant-Appellant cannot so easily abrogate its responsibility.  Even if Commerce had not

addressed this issue in any past proceedings, and even if there was no previous case law on the interpretation of "for consumption" under the third-country sales provision of 19 U.S.C. § 1677b(a)(1)(B)(ii), that does not absolve AHSTAC from developing an argument or offering its own interpretation of the statute. The term "for consumption" is used throughout the Tariff Act of 1930, and AHSTAC could have referenced case law addressing the expression (or analogized the proper meaning of the language) with respect to any number of statutory and regulatory provisions. See, e.g., 19 U.S.C. § 1677b(a)(1)(B)(i) ("for consumption" used in describing the prices used for normal value in the *exporting country*); 19 U.S.C. § 1677b(e)(2)(B) ("for consumption" used in the calculation of constructed value); 19 U.S.C. § 1677b(b)(3) ("for consumption" referenced in identifying what costs to include in certain material costs); 19 U.S.C. § 1504(a)(1) (discussing in general entries "for consumption"); 19 U.S.C. § 1516a(c)(1) (discussing merchandise entered or withdrawn from warehouse "for consumption"); 19 U.S.C. § 1671b(d) (ordering the suspension of liquidation of merchandise withdrawn from warehouse "for consumption"); etc. At a minimum, AHSTAC also could have proffered its own interpretation of what it believed "for consumption" should mean in the context of third-country sales. That AHSTAC did not do so illustrates that AHSTAC did not adequately develop this argument, and the CIT therefore was correct to deem this issue waived.

## **CONCLUSION**

For these reasons, Plaintiff-Appellees respectfully request that the decisions of Commerce and the Court of International Trade on all issues be reaffirmed.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Aqmar Rahman
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff-Appellees Z.A. Sea Foods Priv. Ltd., B-One Business House Pvt. Ltd., Hari Marine Private Ltd., Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Ltd., Sea Foods Private Ltd., Shimpo Exports, Five Star Marine Exports Private Limited, HN Indigos Private Ltd., RSA Marines, Zeal Aqua Ltd.

Dated:  June 5, 2023

## <u>CERTIFICATE OF SERVICE</u>

**Z.A. Sea Foods Private Ltd. et al. v. United States**
**2023-1469**

I hereby certify that on June 5, 2023, a copy of the foregoing response brief of Plaintiff-Appellees, was served upon the following parties by hand and by electronic means:

For the Ad Hoc Shrimp Trade Action Committee:

Nathaniel M. Rickard
Zachary J Walker
Picard Kentz & Rowe LLP
1750 K Street, NW
Suite 800
Washington, DC  20006


/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff-Appellees Z.A. Sea Foods Priv. Ltd., B-One Business House Pvt. Ltd., Hari Marine Private Ltd., Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Ltd., Sea Foods Private Ltd., Shimpo Exports, Five Star Marine Exports Private Limited, HN Indigos Private Ltd., RSA Marines, Zeal Aqua Ltd.

Dated:  June 5, 2023

## CERTIFICATE OF COMPLIANCE WITH
## F.R.A.P. 32(a)5 AND FED. CIR. R. 32(b)(1)

Pursuant to Federal Rule of Appellate Procedure 32(7)(C), the undersigned counsel for Plaintiff-Appellee Z.A. Sea Foods Priv. Ltd., certifies that this brief is printed in a proportionally spaced 14-point typeface in accordance with FRAP 32(a)(5)(A), and further certifies that this brief – excluding the certificate of interest, table of contents, table of authorities, and statement of related cases – contains 10,242 words, including footnotes, and is therefore within the 14,000-word limitation of Fed. Cir. R. 32(b)(1). This word count certification is made in reliance on the word count feature of Microsoft Office 365.

/s/ Robert G. Gosselink
Robert G. Gosselink

Counsel to Plaintiff-Appellees Z.A. Sea
Foods Priv. Ltd., B-One Business House
Pvt. Ltd., Hari Marine Private Ltd., Magnum
Export, Megaa Moda Pvt. Ltd., Milsha Agro
Exports Private Ltd., Sea Foods Private Ltd.,
Shimpo Exports, Five Star Marine Exports
Private Limited, HN Indigos Private Ltd.,
RSA Marines, Zeal Aqua Ltd.